# THE BALTIMORE AND POTOMAC RAILROAD COMPANY *vs.* ELIZABETH SWANN AND WILLIAM T. SWANN.

*Carriers—Negligence—Injury to Passenger Carried in a Baggage Car—Right of Ticket Holder—Presumption of Negligence.*

A party who buys a railroad ticket acquires a right to be conveyed to his destination in one of the carrier's passenger coaches.

If the carrier, being unable from causes beyond his control, to provide a passenger coach, according to its contract, substitutes a baggage car, and in the course of the journey, by reason of some fault in the vehicle, the passenger is injured, the carrier is liable therefor, unless it can show that it exercised the utmost care and diligence, and that the baggage car was a safe conveyance.

In such case it cannot be imputed to the passenger as negligence, or as an assumption of the risk, that he took passage in the baggage car, when no other means of conveyance were offered.

Whether in this case the carrier made diligent effort to procure a passenger coach, and whether the baggage car was a safe vehicle, are proper questions to be submitted to the jury.

And in this case a prayer based upon a comparison between the injuries complained of by the plaintiff as received in the baggage car and those that might have been suffered in a passenger coach, should be rejected, because altogether conjectural.

The fact that a passenger is injured while travelling on a train of defendant is *prima facie* evidence of negligence, throwing upon the carrier the burden of showing that the injury could not have been prevented by the exercise of the utmost care and diligence on its part.

Appeal from the Circuit Court for Charles County. This was an action to recover damages for an injury alleged to have been sustained by the female plaintiff while a passenger on the defendant's train. The evidence and the first three prayers of the plaintiffs, which were granted, are set forth in the opinion of the Court. At the trial the defendant offered the following prayers:

*1st Prayer.*—If the jury shall find that the drag-rope used

in shifting the cars of the defendant at Pope's Creek had been broken or cut in shifting the cars on the afternoon or evening of May 10th, 1893, and that therefore there was no drag-rope on the train on May 11th, 1893, the day on which the injuries complained of are said to have occurred, a drag-rope not being obtained until the morning of May 12th, 1893 ; then the jury shall further find that there was no negligence on the part of defendant's servants or agents in charge of the train in the switching off of the passenger coaches at Cox Station on the arrival of the train on the afternoon or evening of May 11th, 1893, and in their proceeding to Pope's Creek with the engine and baggage car alone ; and the verdict of the jury must therefore be for the defendant, unless the jury further find there was some negligent act or conduct on part of defendant's agents or servants towards the plaintiff, Elizabeth Swann, on said trip from Cox Station to Pope's Creek, or some accident to the said baggage car or train from the negligence of defendant's agents or servants, which caused or directly contributed to the injury or sickness or pain complained of.   (Rejected.)

*2nd and 3rd Prayer.*—If the jury shall find that the defendant's agents or servants ran only a baggage car, with the engine, from Cox Station to Pope's Creek, on the afternoon or evening of May 11th, 1893, on account of the danger of shifting cars at the latter place in the absence of a drag-rope ; and shall further find that the plaintiff, Elizabeth Swann, voluntarily entered said baggage car, or accepted passage therein without complaint or objection on her part, either before or after entering said car, and that after so entering said car she was given the best accommodations and seat the car afforded, whether it were an arm-chair without legs, flat at the bottom, placed on an iron chest or safe 24 inches long, 16 inches wide and 16 inches high, without rollers, with a flat top and bottom, weighing about 100 or 125 pounds, resting on the floor near the side of said car, or a cushion placed on said chest, and that then the engine, with said baggage car attached, proceeded with

due care and caution at a rate of speed not exceeding 20 or 25 miles per hour, or less than the usual rate of speed on other portions of the line, and without any stops to Pope's Creek, when the said plaintiff either got off or was assisted off by the agents of the defendant, then the plaintiffs are not entitled to recover, notwithstanding the jury may further find the said plaintiff, Elizabeth Swann, had a passenger ticket for the trip, denominated first-class.   (Rejected.)

*6th Prayer.*—If the jury shall find that the plaintiff, Elizabeth Swann, suffered a miscarriage or abortion, as testified to by her and others, and that said miscarriage or abortion was caused partly by her trip from Cox Station to Pope's Creek, in the baggage car of defendant, on May the 11th, 1893, and partly by the running or walking and other exertions of the said plaintiff, on that day, then their verdict must be for the defendant.   (Rejected.)

*7th Prayer.*—If the jury shall find that the plaintiff, Elizabeth Swann, just before entering the baggage car of the defendant, on the day in question, ran or walked rapidly, with a ten-months-old child in her arms, a distance of about two hundred and fifty yards, and on reaching Pope's Creek on said car, walked one or one and a-half miles, part the way up a long hill, and shall still further find that the effort and exertion and excitement in so running or walking caused the miscarriage or abortion, or the sickness or pain or injury complained of by her, then their verdict must be for the defendant.   (Rejected.)

*8th Prayer.*—If the jury shall find that the plaintiff, Elizabeth Swann, was not jostled on her trip from Cox Station to Pope's Creek in the baggage car of the defendant, on the 11th day of May, 1893, more than was inevitable while the train was running over that portion of the road, at the usual rate of speed of not more than 20 or 25 miles per hour, then their verdict must be for the defendant.   (Rejected.)

*9th Prayer.*—Before the plaintiffs can recover in this case,

the jury must find that the miscarriage or abortion (if any there were) and all the sickness or pain suffered by the plaintiff, Elizabeth Swann, following her trip from Cox Station to Pope's Creek, in the baggage car of the defendant, on the 11th day of May, 1893, were caused directly and exclusively by injuries sustained by her on said trip on account of the negligence of the defendant; and that the said plaintiff, Elizabeth Swann, in no way contributed thereto.   (Rejected.)

*10th Prayer.*—If the jury shall find that the plaintiff, Elizabeth Swann, would, on account of the curves in the road, have been jostled, even had she been seated in a regular passenger coach, on her trip from Cox Station to Pope's Creek, on May 11th, 1893, and would, if so seated, have been as liable to the injuries complained of as if she had been seated in a baggage car in the manner and way described by the witnesses who have testified in this case, then their verdict must be for the defendant.   (Rejected.)

*11th Prayer.*—If the jury shall find that the injuries and sickness complained of were in any degree owing to the want of due care and caution on the part of Elizabeth Swann, the plaintiff, directly contributing to the said injuries or sickness, then their verdict must be for the defendant. (Rejected.)

*12th Prayer.*—Notwithstanding the jury shall believe from the evidence that the defendant was guilty of negligence; yet, if they shall further believe from the evidence, that the plaintiff, Elizabeth Swann, was also guilty of negligence, and that the injuries or sickness complained of was directly caused partly by the defendant's negligence and partly by the negligence of the plaintiff, Elizabeth Swann, then the verdict of the jury must be for the defendant, without regard to whose negligence was the greater.   (Rejected.)

The Court below (BRISCOE, C. J., and BROOKE, J.), granted the fourth and fifth prayers of the defendant, and rejected the others.   The jury returned a verdict for the plaintiff for

$1,000, and from the judgment thereon the defendant appealed.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, PAGE and ROBERTS, JJ.

*John J. Donaldson* (with whom were *Bernard Carter, L. Allison Wilmer* and *Samuel Cox, Jr.*, on the brief), for the appellant.

The plaintiff's second and third prayers involved the question of the burden of proof, and are an attempt to apply to the circumstances of this case the doctrine of *res ipsa loquitur*, which, it is submitted, is entirely inapplicable; in the first place, there is no room for the invoking of a presumption as to the cause of any injury when there is direct testimony as to the same; in other words, the proof of the fact disables the presumption. *Neubeur* v. *Md. C. R. R. Co.*, 62 Md. 401; *P. W. & B. R. R. Co.* v. *Stebbing*, 62 Md. 518; *Redgrave* v. *Redgrave*, 38 Md. 93, 98; *Blackburn* v. *Crawfords*, 3 Wall. 195; *Owings* v. *Norwood*, 2 H. & J. 96, 107; *Colvin* v. *Warford*, 20 Md. 396; *Beale* v. *Lynn*, 6 H. & J. 336, 351; *Andrew's case*, 39 Md. 329. But, moreover, even were there no direct proof, the injury in this case was not of a kind to raise any such presumption. *Flannery* v. *W. & L. Railway Co.*, Irish Reps. 11 Common Law, 30; *Daniel* v. *Metropolitan Railway Co.*, L. R. 5 House of Lords, 45; *B. & O. R. R.* v. *State*, 63 Md. 143; *Western Md. R. R.* v. *Stanley*, 61 Md. 266; *Curtis* v. *R. & S. R. R.*, 18 N. Y. 534; *Le Barron* v. *Terry Co.*, 11 Allen, 312; *Met. Ry. Co.* v. *Jackson*, L. R. 3 App. 193.

The plaintiff's first prayer is defective, as imposing upon defendant the same degree of care and skill with regard to the convenience provided for the passenger as with regard to the passenger's carriage.

It is also defective inasmuch as it entirely ignores the testimony with regard to the plaintiff's voluntary assumption

of the risk, such as there was. This prayer also, like all the others that go to the question of liability, ignores the true test of a carrier's duty with regard to the accommodation furnished his passengers, namely, that he is bound to the extent of his profession. *Story on Bailments,* sec 591 ; *Johnson* v. *Rw. Co.,* 4 Ex. 367. And it does not leave it to the jury to say that this was a regularly scheduled passenger train, upon which the defendant had a right to expect regular passenger coaches, as indeed it could not, because there is no evidence thereof in the record.

The plaintiff's fourth prayer is defective, inasmuch as it ignores the assumption of the risk by the plaintiff, as shown in Thompson's testimony, which is quite a different question from contributory negligence on her part. This assumption of the risk, it is clear, if the jury believed the fact as testified to by that witness, would relieve the defendant from responsibility. *Siner* v. *G. W. Rw.,* L. R. 3 Ex. 150; *S. C. (on Appeal),* L. R. 4 Ex. 117, 124; *Del. & L. R. R.* v. *Napheys,* 90 Pa. St. 135; *Dietrich* v. *Rw. Co.,* 58 Md. 358.

The plaintiff's fifth prayer is defective, in the first place, because it treats the question of the plaintiff's attempting to make the journey in a baggage car as a matter of contributory negligence, instead of an assumption of the risk (see authorities cited above); and is further defective in that it instructs the jury that this was no bar to recovery, if defendant's servants in charge of the car could have prevented the injury complained of by the exercise of ordinary care ; now, even if it were a contributory negligence case, this doctrine only applies where the defendant's servants have actually become aware that the plaintiff was in a position of danger, and should be further limited by leaving it to the jury to say that they could have avoided the injury by such means as they had at hand. But a reference to some of the authorities, in which this doctrine has been applied, will show better than anything else that it has nothing to do with a case such as this at bar, as for instance, *Kean* v. *B. & O. R. R.,* 61 Md. 154; *Harvey's case,* 69 Md. 339.

The defendant's second and third prayers are founded upon the assumption of the risk, and should have been granted, it is submitted, as laying down the true rule applicable to a case of this character. The seventh prayer of the defendant instructs the jury that if the injuries suffered by her were caused by her own over-exertion and excitement in running or walking on the day in question, then the verdict must be for the defendant; this is founded on the testimony of Drs. Spencer and Diggs, and it is difficult to say upon what theory it was rejected; because, certainly, if her injuries were caused by something other than the circumstances of her railroad trip, the defendant could not be liable. The defendant's ninth, eleventh and twelfth prayers simply put to the jury the ordinary doctrine with regard to contributory negligence, and it is submitted should have been granted. The defendant's eighth and tenth prayers, it is submitted, should have been granted in connection with each other, as founded on the principle that the female plaintiff, being familiar with the line of defendant's road, assumed the risks ordinarily incident to the journey over a line of that character, especially in view of the entire absence of proof that any different structure of the line was consistent with the nature of the defendant's undertaking.

*John H. Mitchell* and *Adrian Posey*, for the appellees.

Bryan, J., delivered the opinion of the Court.

William T. Swann and Elizabeth, his wife, brought suit against the Baltimore and Potomac Railroad Company for bodily injuries sustained by the wife. Verdict and judgment being rendered in their favor, the defendant appealed.

The female plaintiff, about midday on the eleventh day of May, 1893, accompanied by her child ten months old, travelled on the mixed train of the defendant, composed of

passenger coaches and freight cars, from Pope's Creek to Cox's Station, intending to return on the evening of the same day. She purchased a ticket at Cox's Station for the purpose of taking the passenger train which would in ordinary course leave that station about seven o'clock, P. M. The passenger coaches were "switched off" at Cox's and only a baggage car was run from that station on that evening to Pope's Creek. She entered that car and was conveyed to Pope's Creek. The evidence in behalf of the plaintiffs tended to show that the accommodations were very uncomfortable and unsuitable for travellers; and that in consequence of the absence of all conveniences she "was shaken up and knocked about from side to side, and slammed against the side of the car several times, and that immediately after one of these slams, when she was struck in her right side by the side of the car, she experienced a pain there, which was followed by a pain in her back." The evidence also tended to show that the woman was pregnant, and that the injuries which she received caused a miscarriage and that she had suffered pains in her back and side almost constantly for six months. The evidence for the defendant tended to show that she was not thrown about or jostled. It was further testified, that the cars could not be shifted at Pope's Creek without special danger, unless a drag-rope was used; and that the drag-rope used for this purpose had been broken in two on the evening of the tenth, having been before that time weakened by being run over by cars; that the conductor had telegraphed for one on the morning of the ninth, and thereafter, on reaching Baltimore, had applied at the office of the company, but that none was received until the morning of the twelfth. The female plaintiff was a laboring woman, being in the habit of washing, cooking and working in the field. She lived about a mile or a mile and a-half from Pope's Creek, and at the time of these occurrences she had three children. She went to Cox's on a visit to the family of Thompson, a section hand on the railroad,

who lived about half a mile from the station.  There was some conflict of evidence in reference to the cause of the alleged miscarriage, the defendant's testimony supporting the theory that it was more likely to have been caused by the woman's exertions and the excitement consequent upon them before she entered the cars, and after she left them, than by any injuries received while travelling in them.

When the female plaintiff purchased a ticket at Cox's Station, she acquired a contract right to be conveyed to Pope's Creek, in one of the defendant's passenger coaches. If we assume that causes beyond the defendant's control prevented the use of a passenger coach on that occasion, the obligation still remained to carry the passenger safely, so far as it could be done by the exercise of the highest degree of care and skill which was consistent with the nature of the undertaking.  If the baggage car was as safe a vehicle of transportation for passengers as the defendant could procure by the utmost care and diligence, it fulfilled its duty in this respect.  There is no evidence to sustain such an hypothesis, and probably it is contrary to the usual experience of travellers.  And yet, as the defendant substituted it for the passenger coach which it was bound by its contract to furnish, the least which could be demanded of it would be some reasonable effort to make it safe and convenient for a passenger.  If the passenger was injured in the defendant's cars in the course of her journey, and in consequence of some fault or defect in the vehicle of transportation, the defendant is clearly liable for the injury, unless it can show the utmost care and diligence on its part.  And we think that these are the proper inquiries for the jury in this case.  It cannot be alleged against the passenger as fault or negligence that she took passage in the baggage car.  She had a right to be conveyed by the defendant, and she was constrained to travel in this way or not be conveyed at all.  Domestic duties of the most pressing kind required that she should return that night to Pope's Creek.  It would

be unreasonable to hold that she had made a voluntary choice, whereby she had in this way renounced the right to safety and protection which she had purchased.

The Court granted six prayers in behalf of the plaintiff. Exception was taken to only three of them. They are as follows: 1st. If the jury believe from the evidence that the defendant was the owner of the railroad mentioned in the declaration, and sold the plaintiff, Elizabeth, a ticket entitling her to travel on said railroad, and received and accepted her as a passenger to be carried from Cox to Pope's Creek on the line of said railroad, then defendant was bound to exercise on said trip, for plaintiff's safety, the highest degree of care and skill which was consistent with the nature of its undertaking.

2nd. If the jury believe from the evidence that the plaintiff, Elizabeth Swann, was injured whilst a passenger on a train of the defendant, the fact of such injury is *prima facie* evidence of negligence on the part of the defendant, throwing upon it the *onus* of rebutting the presumption, by showing there was no negligence on its part.

3rd. That in order to rebut the presumption of negligence on its part, the defendant must show that the injury sustained by said plaintiff while travelling as a passenger on its train; if the jury find that she was so injured, could not have been prevented by the utmost care and diligence, not only in the running and management of the train, but also in the structure and care of the track, and in all the subsidiary arrangements necessary to the safety of the passengers.

These prayers are taken almost *verbatim* from opinions of this Court. *Baltimore and Ohio Railroad* v. *Worthington*, 21 Maryland, 283 ; *Same* v. *State use of Haner*, 60 Maryland, 462 ; *Hewes and Wife* v. *Philadelphia, &c., R. R. Co.*, 76 Maryland, 159. The three prayers of the defendant which seek to excuse the failure to use a passenger car, because of the want of a drag-rope, do not require the jury

to find that the defendant made a diligent use of the means at its command for the purpose of enabling it to use the car. The first prayer puts it to the jury to find that the drag-rope was broken on the evening of May the tenth, and that no other was obtained until the morning of May the twelfth; but they are not by the prayer required to find that the defendant made a diligent effort to obtain the rope, or that it made any efforts to supply other means of running the car to Pope's Creek. And none of these prayers require the jury to find that the baggage car was a safe conveyance for passengers. The sixth and seventh prayers deny the plaintiff's right to recover, if the miscarriage was caused, in part, by the action of the female plaintiff in making physical exertions and undergoing excitement before she entered the baggage car and after she left it. But even if there could be no recovery for the miscarriage, the pain inflicted and injury sustained in the car would support a verdict, if found by the jury. The same remark will apply to the ninth prayer, which denies a recovery, unless the miscarriage was caused directly and exclusively by injuries sustained on the trip on account of the negligence of the defendant. The eighth prayer makes no reference to the question of the safety of the baggage car as a conveyance for passengers. The tenth prayer institutes a comparison between the injuries complained of, and those to which the female plaintiff would have been liable if seated in a regular passenger coach. It is altogether conjectural what she might have suffered in a regular passenger coach, and such a conjecture cannot be made a basis for the verdict of a jury. The ground of recovery is the absence of the proper degree of care and diligence on the part of the defendant, provided it is shown to the satisfaction of the jury, and not what might have occurred elsewhere.

The eleventh and twelfth prayers present the question of contributory negligence. There is no evidence from which any negligence on the part of the female plaintiff can be

inferred, except such as tends to show that the miscarriage may have been caused in some measure by the fatigue which she underwent before she reached the cars at Cox's, and after she left them at Pope's Creek.   We have already stated our views on this question.   But we may further say, that the plaintiff's fourth prayer, granted by the Court, confines the recovery to the injuries sustained by the female plaintiff whilst *"making said journey."*

All the defendant's prayers, which we have been considering, were rejected by the Court and we approve of the ruling.

*Judgment affirmed.*