## THE UNITED RAILWAYS AND ELECTRIC COMPANY *vs.* J. NATHAN DEAN.

*Railroads: derailed cars; injury to passengers; evidence; duty of passenger to take medical treatment. Negligence: province of Court and jury. Common carriers: not insurers. Exceptions: preparation; signing by other than trial judge.*

In cases of disputed facts negligence is not a question of law for the Court, but one of fact to be determined by the jury, before whom the case is tried, under proper instructions by the Court.                                    p. 700

In an action by a passenger on an electric car against the company for injuries received by him through the derailment of the car in which he was riding the following prayers were held to be correct:

1. The plaintiff prays the Court to instruct the jury that if they find from the evidence in this case that at the time of the happening of the accident complained of,

the defendant was engaged in the operation and mainten-
ance of an electric railway line between the City of Balti-
more and Towsontown, on which it maintained and oper-
ated cars for the transportation of passengers for a reward
and that the plaintiff became a passenger on a car so
operated and maintained by the defendant, and paid his
fare for transportation thereon, and that whilst he was
a passenger on said car, it was derailed, and that in con-
sequence of such derailment the plaintiff whilst in the
exercise of all reasonable care and caution, if they find
he did exercise all reasonable care and caution, was thrown
from the position which he occupied in said car and
thereby injured and shall further find that the defendant
could by the exercise of the utmost degree of care and
diligence which men of ordinary care and prudence would
have exercised under like circumstances in the manage-
ment and operation of said railway line and car, have
avoided said injury, then the plaintiff is entitled to recover
in this case.

2. The jury are instructed that if they find from the evi-
dence in this case that the plaintiff was injured through
some instrumentality in the control of the defendant or
the management or operation thereof, whilst a passenger
on one of the defendant's cars, the fact of such injury
(if any they find) is *prima facie* evidence of negligence
on the part of the defendant, and casts upon it the burden
of rebutting this presumption by showing there was no
negligence on its part.                              p. 701

In an action for damages for personal injuries received by the
plaintiff, if he could have prevented his physical condition by
promptly submitting to the proper medical or surgical treat-
ment, and by using reasonable and ordinary care to avoid
the continuation of the injury he suffered, that he can not
recover any damages for any pain or suffering, mental or
physical, which he endured by reason of his neglect in fail-
ing to have himself so treated.                     p. 701

In an action for damages because of the negligence of the
defendant, the plaintiff is entitled only to such damages as
in the opinion of the jury are definitely proved with reason-

able certainty to have resulted as the natural, approximate and direct effect of the injury received by him and mentioned in the evidence. p. 701

A common carrier of passengers is not an insurer of their safety, and for a mere accident unmixed with negligence no action will lie. (See defendant's second prayer.) p. 702

The law does not require a railway company to insure the safety of its passengers or to adopt every possible contrivance working to their safety that human ingenuity can suggest; and if in the operation of its cars at the time of an accident complained of, a railway company exercised every reasonable safeguard and care and caution which the nature of the business admitted, it has performed its duty in the premises. (See defendant's fourth prayer.) p. 702

Where X-ray plates and photographs had been proven and interpreted by the physicians who took them, it is competent for him to explain them to the jury. p. 702

The admission of competent testimony that could not have injured the exceptant's case is no ground for reversal although its admission may have been erroneous. p. 702

In an action for damages for personal injuries received the plaintiff is entitled to show the extent and duration of the injury and whether it would be permanent or not, as a basis from which the jury might estimate the damage. p. 703

A physician who attended the plaintiff in a damage case and who diagnosed the injury is qualified as an expert and as a physician to give an opinion within his knowledge. p. 703

A physician who saw other physicians make their examination of an injured party and saw them take measurements and participated in the investigation of the injured joint is competent and qualified to form an opinion and to state the nature and effect of the injury to the jury. p. 703

While bills of exception must be signed by the judge who sat during the trial and allowed the exception, it is not necessary that a mere extenion of time for the signing of the bills of exception should be signed by the judge who sat in the case, when he can not be reached or procured for the purpose by reason of sickness, absence or other sufficient cause. p. 705

*Decided March 27th, 1912.*

Appeal from the Circuit Court for Carroll County (BRASHEARS, J.).

The plaintiff brought the suit in the Circuit Court for Baltimore County, to recover damages for injuries to his knee received by him while a passenger on the railroad from Baltimore to Towson. The case was removed to Carroll county for trial and judgment being entered in favor of the plaintiff for the sum of $1,800 the defendant appealed.

The following are the prayers of the plaintiff and the defendant, respectively, and the action of the trial Court on each:

*Plaintiff's 1st Prayer.*—The plaintiff prays the Court to instruct the jury that if they find from the evidence in this case that at the time of the happening of the accident complained of, the defendant was engaged in the operation and maintenance of an electric railway line between the City of Baltimore and Towsontown, on which it maintained and operated cars for the transportation of passengers for a reward and that the plaintiff became a passenger on a car so operated and maintained by the defendant, and paid his fare for the transportation thereon, and that whilst he was a passenger on said car, it was derailed, and that in consequence of such derailment the plaintiff whilst in the exercise of all reasonable care and caution, if they find he did exercise all reasonable care and caution, was thrown from the position which he occupied in said car and thereby injured, and shall further find that the defendant could by the exercise of the utmost degree of care and diligence which men of ordinary care and prudence would have exercised under like circumstances in the management and operation of said railway line and car, have avoided said injury, then the plaintiff is entitled to recover in this case. (*Granted by the Court.*)

*Plaintiff's 2nd Prayer.*—The jury are instructed that if they find from the evidence in this case that the plaintiff was injured through some instrumentality in the control of

the defendant or the management or operation thereof, whilst a passenger on one of the defendant's cars, the fact of such injury (if any they find) is *prima facie* evidence of negligence on the part of the defendant, and casts upon it the burden of rebutting this presumption by showing there was no negligence on its part. (*Granted by the Court.*)

*Plaintiff's 3rd Prayer.*—The plaintiff prays the Court to instruct the jury that if they find their verdict for the plaintiff, then in estimating the damages they are to consider his health and condition before the injury complained of as compared with his present condition in consequence of such injury, and whether the same is in its nature permanent, and how far, if at all, it is calculated to disable him from engaging in employments for which in the absence of such injury he would have been qualified, and also the physical and mental suffering, if any they find, to which he was subjected by reason of such injury, and to allow him such damages as in the opinion of the jury will be a fair and just compensation for the injuries (if any they find) he has sustained. (*Granted by the Court.*)

*Plaintiff's 4th Prayer.*—The plaintiff prays the Court to instruct the jury that if they find their verdict for the plaintiff, then in estimating the damages they are to consider his health and condition before the injury complained of as compared with his present condition in consequence of such injury, and whether the same is in its nature permanent, and how far, if at all, it is calculated to disable him from engaging in employmnets for which in the absence of such injury he would have been qualified, and also the physical and mental sufferings, if any they find, to which he was subjected by reason of such injury, and to allow him such damages as in the opinion of the jury will be a' fair and just compensation for the injuries (if any the jury find) he has sustained; but the plaintiff is not entitled to recover in this action for any injuries that he could have avoided by the exercise of that degree of care and caution which a man of ordinary care and prudence would have exercised under like circumstances. (*Granted by the Court.*)

*Defendant's 1st Prayer.*—The Court instructs the jury that if they find from the evidence in the case the injuries complained of resulted from an unavoidable accident, then the verdict must be for the defendant. (*Rejected by the Court.*)

*Defendant's 2nd Prayer.*—The Court instructs the jury that a carrier of passengers is not an insurer of their safety, and for a mere accident unmixed with negligence, no action will lie. even though an injury has been done, and if the jury shall find from the evidence that there was no negligence on the part of the defendant, its agents and employees, then their verdict must be for the defendant. (*Granted by the Court.*)

*Defendant's 3rd Prayer.*—The Court instructs the jury that a carrier of passengers is not an insurer of their safety, and if the jury shall find from the evidence that the defendant. its agents and employees were guilty of no negligence in connection with the accident of July 10th, 1910, then even though the jury shall find that the plaintiff was injured in said accident, their verdict must be for the defendant. (*Granted by the Court.*)

*Defendant's 4th Prayer.*—The Court instructs the jury that the law does not make a street railway company an insurer of the safety of its passengers, or require it to adopt every possible contrivance looking to their safety that human ingenuity can suggest. and that if the jury find from the evidence that the defendant, its agents and employees in reference to both the construction of its tracks and the operation of its car thereon at the time of the accident complained of, used every reasonable safeguard and care and caution which the nature of the business admitted, it has performed its duty in the premises, and the verdict must be for the defendant. (*Granted by the Court.*)

*Defendant's 5th Prayer.*—The Court instructs the jury that the law does not make a street railway company an insurer of the safety of its passengers, and if the jury find from the evidence that the defendant, its agents and employees did in reference to both the construction of its tracks,

and the operation of its car thereon at the time of the accident complained of, used every reasonable safeguard and care and caution which the nature of the business admitted, it has performed its duty in the premises, and the verdict must be for the defendant. (*Granted by the Court.*)

*Defendant's 6th Prayer.*—The Court instructs the jury that if they find from the evidence that the plaintiff was a passenger on the car of the defendant, which car ran off the track on the night of July 10th, 1910, still the burden of establishing by a preponderance of proof satisfactory to the jury that the plaintiff received in the accident mentioned in the evidence, the injury which the plaintiff alleges rests upon the plaintiff. (*Granted by the Court.*)

*Defendant's 7th Prayer.*—The Court instructs the jury that even if they find for the plaintiff the jury are to allow him only such damages as in their opinion have been affirmatively proved with reasonable certainty to have resulted as the natural, proximate and direct effect of the injury received by him and mentioned in the evidence. (*Granted by the Court in connection with plaintiff's third and fourth prayers.*)

*Defendant's 8th Prayer.*—The Court instructs the jury that even if they should find that the plaintiff is entitled to recover, yet under the pleadings in this case there can be no recovery for permanent injury. (*Rejected by the Court.*)

*Defendant's 9th Prayer.*—The Court instructs the jury that even if they shall find that the plaintiff is entitled to recover, and that the injury complained of is in its nature permanent, yet if the jury shall further find from the evidence that the plaintiff is responsible for the permanency of the injury by having failed to follow the advice of his physicians, then he cannot recover damages based upon the permanency of the injuries. (*Rejected by the Court.*)

*Defendant's 10th Prayer.*—The Court instructs the jury that even if they shall find that the plaintiff is entitled to recover, and that the injury complained of is in its nature permanent, yet if the jury shall further find from all the evidence in the case that the plaintiff failed to use reason-

able care to avoid the permanency of the injury, and that such failure on his part, if the jury shall so find, is responsible for the permanency of the plaintiff's injury then he cannot recover damages based upon the permanency of the injury. (*Rejected by the Court.*)

*Defendant's 11th Prayer.*—That if the jury should find that the plaintiff was injured at the time and in the manner testified to by him, and shall further find that his injury was of the character called a sub-luxation of the sacro illiac joint, then it was the duty of the plaintiff to use all reasonable means to effect its cure and to prevent an aggravation of such injury; and if the jury shall further find that he could have reasonably expected to have been cured by undergoing medical treatment at a hospital such as was advised by his physicians, if the jury shall so find, and shall further find that he did not submit to or take such treatment, and did not make all reasonable efforts within his power to obtain it, and shall further find that if he had followed the advice of his physicians and submitted to be treated for his injury at an hospital, he would have prevented the continuation of his injury, then the plaintiff can not recover any damages for his present or any future pain and the physical disability resulting from such injury; and if the jury shall find for the plaintiff, they are limited in assessing his damages to such sum of money as will be a reasonable compensation for the pain and suffering, he endured from his injury to the time when he could have reasonably expected to have been cured, if he had promptly taken the medical treatment advised. (*Rejected by the Court.*)

*Defendant's 12th Prayer, as Offerred.*—The Court instructs the jury that even if the jury shall find that the plaintiff is entitled to recover, and that the injury complained of is existing at this time, if the jury shall so find, yet, if the jury shall further find, that the plaintiff could have prevented his present physical condition, by promptly submitting to proper medical or surgical treatment at an hospital and shall further find, that the plaintiff failed to

use reasonable and ordinary care to avoid the continuation of the injury he suffered, if any, and shall further find that such failure on his part to exercise reasonable care and caution to prevent the continuation of his injury, if the jury shall so find, is responsible for his present physical condition, then the plaintiff can not recover any damages for the pain and suffering, mental or physical, which he has endured, if any by reason of his neglect in failing to have himself treated at an hospital as advised by his physicians.

*Defendant's 12th Prayer, as Modified.*—The Court instructs the jury that even if the jury shall find that the plaintiff is entitled to recover, and that the injury complained of is existing at this time, if the jury shall so find, yet, if the jury shall further find, that the plaintiff could have prevented his present physical condition, by promptly submitting to proper medical or surgical treatment; and shall further find, that the plaintiff failed to use reasonable and ordinary care to avoid the continuation of the injury he suffered, if any, and shall further find that such failure on his part to exercise reasonable care and caution to prevent the continuation of his injury, if the jury shall so find, is responsible for his present physical condition, then the plaintiff cannot recover any damages for the pain and suffering, mental or physical, which he has endured, if any, by reason of his neglect in failing to have himself so treated. (*Granted as modified.*)

*Defendant's 13th Prayer.*—The Court instructs the jury that a carrier of passengers does not insure their safety in transportation and if the jury shall find from the evidence that the defendant, its agents and employees used the highest degree of care and diligence in the operation and running of the car in which the plaintiff was being carried as testified to by him; and shall further find, that the tracks and road bed of the defendant were properly constructed and maintained and were at the time of the accident in good condition; and shall further find that said car was the usual and ordinary kind of electric car used for suburban traffic, being equipped with the latest appliances for its operation, and

was suitable for the safe transportation of passengers; and shall further find that said car was inspected and examined by competent employees of the defendant within a reasonable time before the accident occurred; and shall further find that said inspection disclosed no defect in its condition; then the defendant has performed the duty it owed to the plaintiff in its carrying of him, and the management of its road; and if the jury shall further find, that the car in which the plaintiff was riding jumped the track or was derailed, by reason of a cause unknown to the defendant or its agents or which it or they could not have discovered by the exercise of the utmost skill and diligence on its or their part, then under the pleadings, their verdict must be for the defendant, even though, they the jury shall further find that the plaintiff, without fault on his part did receive injuries by reason of the derailment of the car upon which he was riding.  (*Rejected by the Court.*)

*Defendant's 14th Prayer.*—The Court instructs the jury, that if they find from the evidence in the case that the plaintiff suffered no injury to his right sacro illiac joint from the derailment of the car as testified to by the plaintiff, then their verdict, under the evidence, must be for the defendant.  (*Rejected by the Court.*)

*Defendant's 15th Prayer.*—That even if the jury shall find that the car of the defendant in which the plaintiff was riding on the night of July 10th, 1910, was derailed by the negligence of the defendant, yet, the verdict of the jury must be for the defendant, unless the jury shall further find by preponderance of the evidence that the plaintiff while using due care, was injured by the derailment of said car. (*Granted by the Court.*)

*Defendant's 16th Prayer.*—The defendant prays the Court to instruct the jury that if the jury shall find from the evidence in this case that the defendant used proper care and diligence in the care, maintenance and operation of its cars and track, and that the plaintiff by his own act, in sitting in defendant's car with "his foot up on the side rail" of

said car, as testified to by the plaintiff, contributed thereby to the injury which the plaintiff claims to have sustained as a result of the car of the defendant leaving the rails or jumping the tracks on the night of July 10th, 1910, at Towson, Baltimore county, Maryland, then the verdict of the jury shall be for the defendant. (*Rejected by the Court.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, PATTISON, URNER and STOCKBRIDGE, JJ.

*Guy W. Steele*, for the appellant.

*T. Scott Offutt* (with whom were *J. A. C. Bond* and *Robert H. Archer, Jr.*, on the brief), for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The principles of law controlling this class of negligence case are well established by a number of decisions of this and other State Courts. The chief difficulty consists in a proper application of them to the state of facts presented on the record in each case.

The plaintiff brought this suit in the Circuit Court for Baltimore County on the 16th day of January, 1911, against the defendant, the United Railways and Electric Company, to recover damages for personal injuries received by him while a passenger on the railway, on its route from Baltimore City to Towson, in Baltimore county.

On the 15th day of April, 1911, the case was removed to the Circuit Court for Carroll County for trial, and from a judgment entered in that Court, in favor of the plaintiff, for the sum of $1,800.00 and costs, the defendant has appealed.

The rulings of the Court below, upon the defendant's demurrer to the declaration; the overruling of its motion for a rule for bill of particulars and its exception to the action of the Court in dismissing the defendant's petition for payment of costs of the former trial (where the plaintiff

submitted to a *non-pros*, before suit in this case, the cause of action being the same in both cases), were waived in this Court and are not pressed, in the argument in the brief.

The questions for our consideration on the record now before us, arise upon twenty-four bills of exceptions, reserved by the defendant, during the trial of the case, on rulings of the Court upon the evidence and the prayers. Twenty-two of these present rulings of the Court upon the evidence. The first, fourth, fifth, seventeenth, nineteenth and twentieth were abandoned at the hearing and are not discussed by the appellant in its brief. The twenty-third and twenty-fourth exceptions relate to the Court's rulings on the prayers.

At the trial of the case, the plaintiff presented four prayers, all of which were granted. The defendant offered sixteen prayers, and of these the second, third, fourth, fifth, sixth, seventh and fifteenth were granted. The twelfth was granted, as modified, but the defendant's first, eighth, ninth, tenth, eleventh, thirteenth, fourteenth and sixteenth prayers were rejected.

The rulings of the Court in granting the plaintiff's prayers, the modification of the defendant's twelfth prayer and the rejection of eight of the defendant's prayers form the basis of the twenty-fourth exception.

The facts set out in the record before us and on which the rulings of the Court below are based, briefly stated, are these: The defendant is a corporation and operates an electric railway in Baltimore City and Baltimore County. The plaintiff is a resident of Harford county, and on the 10th of July, 1910, was a passenger of the defendant company from Baltimore to Towson. He left Baltimore City to return to his home in Bel Air, Harford county, at 9 o'clock on the night of the accident and took a car at Ranier avenue and 10th street, and transferred to the York Road car to Towson, and from there he took the train to Bel Air. The car upon which the appellee was riding was derailed, as it approached the overhead bridge crossing of the Maryland and Pennsylvania Railroad near Susquehanna avenue, Tow-

son, it jumped the track and struck a telegraph pole and pile of lumber.

The plaintiff testified at the time of the accident he was sitting about the center of the car on its right-hand side, and remained in the same position during the entire transit. "I was sitting with my foot up on the side rail; there is a little projection out; I had my foot up on that. They had small transverse seats which seat two like a steam car has; going out from Govanstown to Towson, the car was traveling at a very high rate of speed. I suppose there were ten people on the car, which was traveling very fast; you could see by the side, you could tell by the feel of it. When it was going through the curve (reverse curve) and over the switches the car started to wabble, and it never straightened up any more until it jumped the track. They never slackened up for the curve at all. When it went through the curve it shook the people in the car. When the car left the track it threw me forward and jammed my knee between the seat there and the window. My leg was jammed in between the two. It was jammed in there as far as it would go; it was jammed in there pretty tight, and it remained in there until the car struck the telephone pole or a pile of lumber. It threw my body forward and my head and shoulder against the seat in front of me; then it jerked my leg out and I fell to the floor; the first jar locked my knee in there and the second jar struck my head against the the back of the seat and my shoulder; then it jerked me loose and threw me out on the floor; one lady in the car fell to the floor that was standing up. She came back to where her husband was sitting with a baby in his arms and tried to get the baby, she was thrown to the floor. A woman sitting up on the front seat, a colored woman, was thrown to the floor right off the seat. The driving of my leg in there between the edge of the seat and side of the car and then wrenching it out and throwing me on the floor twisted my hip loose, made a little lump on my head; my shoulder struck the hardest on the seat. The car was at a right

angle with the tracks and the end of the car was partly across the south-bound tracks. It projected far enough to prevent cars from going southward blocked the traffic at that point until after that train went up (the 11:20 train from Belair). I looked at the track; the road bed there was torn up; in between the tracks was torn up; the cobblestones and the track at that point was torn up, just below where the car was standing towards Baltimore, I suppose six feet, probably eight, something like that. They were torn up on both sides of the rail. One end of the rail was sticking about that far above the other rail (indicating about 4 inches). I suppose it was a joint. I don't know whether it was broken or not. A pile of timber was in front of the car. Long timbers, I couldn't say positive what they were, whether they were ties or what they were, the car was jammed up tight against it, and the fender was mashed up to one side. There was a mark on the telegraph pope and some one said at the time: "Look where she struck the telegraph pole."

Dr. Purnell F. Sappington testified that he was called to see the plaintiff after the accident, and that he found him suffering with pain in the hip and down the course of the nerve supply, the upper and lower leg. He diagnosed his injuries as a dislocation of the sacro illiac joint and technically known as a sacro illiac subluxation. He also testified that the injury was permanent, would interfere with his ability to walk without inconvenience and it would give him pain.

Dr. Frederick H. Baetjer, on the staff of the Johns Hopkins University, Baltimore, made an X-ray plate of the injured joint and confirmed the diagnosis of Dr. Sappington.

The testimony of Dr. Howell Billingslea, who examined the plaintiff shortly before the trial, was to the effect that the diagnosis of Dr. Sappington was correct, and there was an injury to sciatic nerve, and just such an injury as had been testified to by the plaintiff's witnesses.

The witnesses, Quickly, Robinson and Driver, who were on the car at the time of the accident, each testified to the excessive speed of the car, as it approached Towson, and that it did not slow up when going through the reverse curve on the track; that two or three of the passengers were knocked from the seat when the car jumped the track and struck the pile of lumber.

The testimony on the part of the defendant, tended to show that the car was running at the usual rate of speed; that it slowed up as it approached the curve; that the track was in good condition, and that the car had been inspected before leaving the barn on the day of the accident, and the car was in good order, except one of the side slides that carried the weight of the body on one side was bent and the other one was broken. The witness Frazier testified upon cross-examination that both of the slides on that truck were out of order; they are near the middle of the truck. Pair of wheels here and pair of wheels here; then it comes between the wheels; that is done to prevent the car rocking too much from side to side. If these slides were not there the car would rock too violently from side to side. They are put there for that purpose.

There was also conflict in the medical testimony of the X-ray experts, Drs. Baetjer and Cotton as to their interpretation of the X-ray plates submitted as evidence in the case.

Drs. Harrison, Fitzhugh and Woodward, who testified on the part of the defendant, did not concur with Drs. Baetjer, Sappington and Billingslea as to their diagnosis and could not convince themselves after an examination of the plaintiff, "that he had a sub-luxation of the right sacro illiac joint, or that the injury was permanent."

Upon these and the other facts set out in the record, we think, the case was one for the consideration of a jury. The alleged negligence of the appellant was not a question of law for the Court, but one of fact to be determined by the jury, before whom the case was tried, upon proper instructions by the Court.

This brings us to the law of the case, as presented by the plaintiff and defendant's prayers, and this, we think, was properly submitted by the plaintiff and defendant's granted prayers. We do not understand that the plaintiff's first and second prayers are seriously questioned. They are the usual prayers in negligence cases like this and have been repeatedly approved by this Court. *B. & P. R. Co.* v. *Swann,* 81 Md. 409, and cases there cited.

The plaintiff's third and fourth prayers were granted· in connection with the defendant's seventh and twelfth prayers, as modified. By the defendant's seventh prayer the jury were told that even if they find for the plaintiff the jury are to allow him only such damages as in their opinion have been affirmatively proved with reasonable certainty to have resulted as the natural, proximate and direct effect of the injury received by him and mentioned in the evidence. The defendant's twelfth prayer as modified was as follows:

The Court instructs the jury that even if the jury shall find that the plaintiff is entitled to recover, and that the injury complained of is existing at this time, if the jury shall so find, yet, if the jury shall further find that the plaintiff could have prevented his present physical condition, by promptly submitting to proper medical or surgical treatment; and shall further find that the plaintiff failed to use reasonable and ordinary care to avoid the continuation of the injury he suffered, if any, and shall further find that such failure on his part to exercise reasonable care and caution to prevent the continuation of his injury, if the jury shall so find, is responsible for his present physical condition, then the plaintiff cannot recover any damages for the pain and suffering, mental or physical, which he has endured, if any, by reason of his neglect in failing to have himself so treated.

These prayers, fully and correctly submitted the law upon the measure of damages, under the facts of the case, and are free from the objections urged against them.

The defendant's second, third, fourth, fifth, sixth and fifteenth granted prayers, together with the plaintiff's granted prayers, correctly stated the propositions of law, applicable to the case and presented the law, in as favorable a light as the defendant had a right to ask.

We find no reversible error in the refusal of the Court to grant the defendant's rejected prayers. Five of these related to the measure of damages' and the others were but repetition of the propositions of law covered by the granted prayers, on the right of the plaintiff to recover.

What we have said in discussing the granted prayers will dispose of the defendant's rejected prayers, and also the action of the Court in overruling the defendant's special exception to the granting of the plaintiff's first and third prayers.

The second exception was taken to the following question asked Dr. Baetjer, the X-ray expert: "Doctor, take this plate which I hold in my hand, this plate with the single X mark. I want you to go before the jury and show them and point out on that plate what it shows in reference to the bones of the plaintiff's body."

The X-ray plates and photographs had been proven and also interpreted by Dr. Baetjer and it was competent for him to explain them to the jury. *Dorsey* v. *Habersack,* 84 Md. 125; *Harford Co.* v. *Wise,* 71 Md. 43; *Geneva* v. *Burnett,* 58 L. R. A. 287.

The testimony objected to in the third exception was unimportant and its admission could not have injured the defendant's case. Dr. Baetjer had testified that from the condition of the plaintiff, the slipping of the sacro illiac joint was not congenital, and whether it was produced by some cause since his birth, unknown to the Doctor, could not have prejudiced the case before the jury.

The sixth and seventh exceptions present substantially the same question. Dr. Sappington, the medical expert, was asked this question: "From the physical examination which you made of the plaintiff and from the examination

which you made of the X-ray plates taken by Dr. Baetjer, what was your diagnosis of his condition?" The Doctor had previously testified that the X-ray plates substantiated his diagnosis, and having made the physical examination, he was clearly competent to give the result of that examination to the jury. There was no error in these rulings.

The eighth, ninth, tenth and eleventh exceptions will be considered together. They embrace objections to questions propounded to Dr. Sappington and answers given by him as to the probable duration of the injury from which the plaintiff suffered, the duration of the bent condition of the leg, and the duration of the pain. There was no error in the ruling of the Court upon these exceptions. The plaintiff was entitled to show the extent and duration of the injury and whether it would be permanent or not, as a basis for the jury and from which the jury could estimate the damages. Dr. Sappington had attended the plaintiff, diagnosed the injury and understood the case. He was, therefore, qualified both as an expert and as a physician to give an opinion within his knowledge.

The twelfth and thirteenth exceptions relate to the testimony of Dr. Billingslea, as to whether the plaintiff's injuries were permanent or what character they were as they impressed him. Dr. Billingslea was present and saw the other physicians make their examinations and take the measurements of the plaintiff. He testified, "I looked on and confirmed what they were doing. We put him upon the table and he was stripped. We tried to relax his knee, and we were unable to entirely straighten his leg." I think the man was suffering from an injury to the sciatic nerve; there was pressure upon that nerve by the sub-luxation by the change of position in the pelvis bone." He saw the other physicians make their examinations and take the measurements, and participated in the investigation of the injured joint. Under such circumstances, he was clearly competent and qualified to form an opinion, and to state the nature and effect of the injury.

There was clearly no error in the rulings in either of these exceptions. *Williams* v. *State,* 64 Md. 394; *United Ry's* v. *Seymour,* 92 Md. 431.

We have carefully examined the rulings of the Court brought here on the fourteenth, fifteenth, sixteenth, eighteenth, twenty-first and twenty-second bills of exceptions, in so far as they are properly before us, and without discussing them in detail, only deem it necessary to say, that we find no such error on these rulings as would justify a reversal of the judgment.

The motion to dismiss this appeal will be overruled. While the motion raises for the first time the question of the propriety and power of a judge other than the trial judge, to extend the time for signing bills of exception on appeals to this Court, the practice has prevailed and the power has heretofore been recognized and been followed in the Courts of Baltimore City and in some of the circuits of the State. In this case the time for signing the bills of exceptions was on the 14th of August, 1911, extended for two months by JUDGE WILLIAM H. THOMAS, one of the judges of the Circuit Court for Carroll County, who did not sit in the trial of the case. On the 21st of June, 1911, the time for signing these exceptions had been extended by JUDGE JAMES R. BRASHEARS, who sat at the trial of the case, to and including the second Monday of August, 1911.

In *Carter* v. *Md. & Pa. Ry. Co.,* 112 Md. 599, it is said, the power of the Court to grant successive extensions of time for the purpose of preparing and signing bills of exceptions has been recognized by a number of cases. *Gottlieb* v. *Wolf,* 75 Md. 126; *Horner* v. *Buck,* 48 Md. 369; *Edelhoff* v. *Horner & Miller,* 86 Md. 606.

And it was further said: It has been held, by our predecessors that the subject of the time and circumstances of signing the bills of exception is a matter under the control of the inferior Court whose ruling cannot be revised on appeal. *Andre* v. *Bodman,* 13 Md. 256; *Wheeler* v. *Briscoe,* 44 Md. 311; *Roloson* v. *Carson,* 8 Md. 226.

In *Rhinehart* v. *State,* 45 Md. 454, it was said, that a bill of exceptions must be signed by the judge, who makes the ruling to which exception is taken. *Hooker* v. *Sawyer,* 56 Md. 468; *Soper* v. *Jones,* 56 Md. 503; *Albert* v. *State,* 66 Md. 325.

In *State* v. *Weiskittle,* 61 Md. 48, it was held that the signing and sealing of bills of exception by a judge after the expiration of his term of office and the qualification of his successor is a void act and no agreement of counsel can give it validity. *Dakin* v. *Pomeroy,* 9 Gill, 1; *Livers* v. *Ardinger,* 90 Md. 36; *Alex. British Statutes,* 126, 133.

While the rule is well settled that bills of exception must be signed by the judge who sat during the trial and who allowed the exception, no such reason we think can apply to the mere extension of the time for the signing of the bills when the judge who sat in the case cannot be reached or procured for the purpose by reason of sickness, absence or other sufficient cause. It appears that the rules of the Circuit Court for Carroll County provide that the time for signing bills of exceptions may be extended by the Court and this being so, the act of JUDGE THOMAS, a member of that Court, in allowing the extension here in the absence of JUDGE BRASHEARS, was clearly the act of that Court and is a valid act. It may be proper to say that the better practice is to apply to the judge who sat in the case, and who is required to sign the bills of exception, for the extension of the time, in order to avoid any confusion or misunderstanding between the parties to the case.

Finding no reversible error in the rulings of the Court, either upon the prayers or the evidence, and as the case was fully and fairly submitted to the jury, the judgment will be affirmed.

*Judgment affirmed, with costs.*