# THE UNITED RAILWAYS AND ELECTRIC COM-
# PANY *vs.* MARY E. HERTEL.

*Negligence—Carriers—Alighting From Standing Street Car Not at*
*Regular Stopping Place—Knowledge By Conductor of Passenger's*
*Position—Street Railway Regulation—Instructions to the Jury—*
*Appeal.*

Upon appeal from a ruling of the trial Court either admitting in evidence
or rejecting a written instrument, the writing itself, or so much of it as
is necessary to enable this Court to ascertain its legal effect, must be
incorporated in the record, so that this Court may be enabled to deter-
mine whether it was relevant and if the appellant was injured by the ac-
tion of the trial Court.

In an action against a street railway company for an injury caused by the premature starting of a car while the plaintiff was getting off, the defendant offered to show a regulation requiring its motorman to stop in front of the schoolhouse where the accident occurred (the schoolhouse being near a corner), which regulation the Court below refused to admit in evidence. *Held*, that since it was not shown that the plaintiff was aware of the regulation, and since the regulation was not relevant to the issue of the defendant's negligence and plaintiff's contributory negligence as made by the evidence there was no error in this ruling.

If a street car stops to let off passengers at a place not a customary stopping place, those in charge of the car must wait long enough to enable passengers alighting to do so in safety.

When a passenger in a street car signals the conductor to stop and he does so, and the passenger begins to alight while the car is at a standstill and is injured by its starting before he gets wholly off, that is evidence of negligence on the part of the defendant, although the car was not then at a crossing and a notice posted in the car stated that it would stop at crossings.

Plaintiff was a female passenger with a companion on defendant's street railway and notified the conductor that they wished to get off at the next crossing. The conductor pulled the bell and the car stopped about fifty feet from the crossing. While the plaintiff was in the act of stepping from the foot-board, the car started again and plaintiff was thrown to the ground and injured. Defendant offered testimony to show that the car was not moving when plaintiff fell, but that, after putting one foot to the ground, she fell over backwards. This notice was posted in the car : "No one is permitted to ride on the platform or to get off or on when the car is in motion. Persons are warned of the danger. Cars stop to take on and let off passengers at near sides of cross streets. Those violating these orders do so at their own risk." *Held*, that the uncontradicted evidence shows that when the car stopped the plaintiff was justified in assuming that passengers were expected to get off, and that the conductor knew that plaintiff was in the act of descending when the car started again and that therefore there was evidence of the defendant's negligence and there was no such contributory negligence of the plaintiff as bars the action.

*Held*, further that the trial Court properly refused to instruct the jury that if the notice warned passengers that the cars stopped for them to get off at cross streets and the plaintiff was injured while disregarding this warning, that is conclusive evidence of negligence on her part. *Held*, also, that the notice posted in the car does not mean that the cars would stop *only* at cross streets.

Appeal from the Court of Common Pleas (HARLAN, C. J.) The plaintiff obtained a judgment for $4,000.

*Plaintiff's 1st Prayer.*——If the jury believe the defendant operated the railroad mentioned in the declaration and accepted the plaintiff as a passenger, then the defendant was bound to exercise for the plaintiff's safety, while such passenger, the highest degree of care and skill practicable under all the circumstances ; and if the jury further believe the plaintiff was injured whilst such passenger because of the failure on the part of the defendant to exercise such care and skill, then she is entitled to recover in this action, unless the jury find that by her own negligence she directly contributed to the injury she received. (*Granted.*)

*Plaintiff's 2nd Prayer.*——In order to defeat a recovery on the ground of contributory negligence on the plaintiff's part, the defendant must satisfy the jury by preponderating evidence of two facts : First, that the plaintiff was negligent ; and second, that such negligence directly contributed to the injury. (*Granted.*)

*Defendant's 4th Prayer.*——That if they shall find that a warning notice similar to the one offered in evidence was conspicuously posted in the car on which the plaintiff was riding, warning passengers that cars stop for them to alight at cross streets and that the plaintiff was a frequent passenger and had read or could have read the said notice, warning passengers that cars stopped for them to alight at cross streets, but that notwithstanding said notice the plaintiff attempted to leave the car when the car had stopped at a school house before reaching the cross street, if they so find, and that the car was standing still during the whole time the plaintiff was alighting and that she fell and was injured while so alighting, then their verdict must be for the defendant, even though they should believe that such violation of the defendant's rules was seen or acquiesced in by the conductor of the car. (*Refused.*)

*Defendant's 8th Prayer.*——If the jury find the facts set forth in defendant's 6th prayer, then even if they believe the car was started while the plaintiff was in the act of violating said regulation this does not entitle the plaintiff to recover unless they believe that the car was started by the agents of the de-

fendant after the plaintiff had notified the conductor of her intention to alight at that particular place before reaching the cross street and the Court instructs the jury that there is no evidence in this case of any such notice.  (*Refused.*)

*Defendant's 12th Prayer.*—If they find that the car was standing still during the whole time the plaintiff was alighting, and that she fell and was injured while so alighting, the verdict must be for the defendant.  (*Granted.*)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Geo. Dobbin Penniman* and *B. Howell Griswold, Jr.*, for the appellant.

The theory on which the defendant's rejected prayers were drawn was that the regulation posted in cars notifying passengers that the cars stopped at near side of cross streets, was a reasonable one, and if the plaintiff was injured while attempting to alight from the car when it had not yet reached the corner, and at a place plainly not intended for her to alight, she was in the act of violating a reasonable regulation and could not recover, as there was no evidence to show that the conductor saw her in the act of breaking the regulation.

Passengers are notified *where* the cars stop and the agents of the company must be on their guard at these places to see that passengers board and alight from cars in safety. But when a car has left a corner the conductor is perfectly justified in attending to his other duties; he may go inside the car, collect fares and deliver transfers, relying upon this notice to passengers. When the car again reaches a stopping place to "take on and let off passengers," it is his duty to be on his guard for them. If this were not a reasonable regulation, a conductor could never leave his platform in safety, but would be obliged to remain in a position where he could see all passengers desiring to board or alight from the cars; in the event, as constantly happens, of the car being brought to a stop or slow down by some constantly recurring incident of street

traffic.   The passenger was notified to this effect and warned
of the danger of violating the regulation.   In this case the
passenger had signified her intention of leaving the car at the
corner of *Lafayette avenue,* and the conductor had given the
signal to that effect.   Having attended to his duties and hav-
ing been notified where the plaintiff intended to alight, he was
justified in supposing the plaintiff would be guided by the
notice posted in the car—known to every traveller—and he
was further justified in attending to his other duties, until the
car stopped at the place where the passenger had notified him
she intended to alight.   In *Sharkey's case,* 84 Md. 163, the
plaintiff attempted to alight some distance from the corner,
and at such a distance that it must have been apparent to any-
one who had looked that the car had not reached the stopping
place, and furthermore, that the place was not one where pas-
sengers were let off.   Her own evidence shows that she was
sitting immediately beside the footboard, and when she saw
the car stop she got up quickly and stepped off; just as her
companion was beginning to start and she, the plaintiff, was
in the act of stepping off, the car "lurched."   The whole oc-
currence must have happened *in a few seconds* and before it
was possible *for the conductor to stop her.*   But, in addition to
this, there was absolutely no evidence to show that the con-
ductor saw her attempt or could have prevented her injury if
he had.   She had notified him of her intention to get off at
Lafayette avenue, and presumably he relied upon this, and the
whole evidence of the plaintiff, if true, tends to show that the
car had simply stopped for a second or so before reaching the
corner, and immediately went forward again to the corner.
The following cases are in point: *Jackson* v. *Grand Ave. Ry.
Co.,* 118 Mo. 199; *North Birmingham Co.* v. *Calderwood,* 89
Ala. 253; *Oddy* v. *Ry. Co.,* 178 Mass. 341.

The abstract propositions of law in the plaintiff's first and
second prayers were misleading in the case at bar.   There
was evidence tending to show that the plaintiff started to
alight at a place, other than the regular place, in violation of
a reasonable regulation conspicuously posted.   The plaintiff's

first prayer ignores the defendant's theory of the case, and the evidence in support of that theory, nor did it in terms confine itself to the plaintiff's theory and evidence, and is therefore not only too general and abstract, but directly misleading.

*William Colton* and *Edward L. Ward*, for the appellee.

The conceded testimony is that the car was at a standstill at the time the plaintiff proceeded to alight, and the uncontradicted testimony of the plaintiff is that before she attempted to alight she notified the conductor in the usual and ordinary way by signal of her intention so to do ; that he was looking at her at the time this signal was given, and that he pulled the bell once, which notified the motorman then and there to stop this car.   Now, after this car had fully stopped, without any notice or warning that the car was about to proceed forward, and without any signal from the conductor to the motorman so to do, and while the plaintiff is in the position described by her, upon the foot-board and about to descend, in full view of the conductor, the motorman suddenly starts this car, thereby precipitating the plaintiff therefrom.   It is not, therefore, the place at which the plaintiff attempted to alight from the car that has caused the trouble, but it is because she does the very thing which, in effect, the conductor tells her to do, to-wit., to descend from a car when he stops the car upon reasonable notice to him of her intention to alight therefrom.   It is plainly the duty of the defendant, under the circumstances, to have afforded the plaintiff a reasonable opportunity to alight from its said car ; it was bound to exercise towards the plaintiff the highest degree of care practicable under all the circumstances, to wit. , the circumstances indicated ; her injury, therefore, was occasioned by no violation on her part of any regulation of the company which she knew, or ought to have known, and it never was in contemplation, and could not reasonably have been in contemplation by the defendant at the time the notice alleged to have been posted in this car was issued to meet the circumstances of this case.   *Cason's case,* 72 Md. 378; *Washington City, &c., R. Co.* v. *Grant,* 11 App.

Cas. (D. C.) 113; *Darey* v. *Greenfield R. Co.*, 177 Mass. 110; *Chicago R. Co.* v. *Manning*, 170 Ill. 417; *Railroad* v. *Mills*, 105 Ill. 67; *West Chicago, &c., Co.* v. *Steiver*, 69 Ill. App. 625; *North Birmingham, &c., Co.* v. *Calderwood*, 89 Ala. 247; *Washington, &c., R. Co.* v. *Harman*, 147 U. S. 571.

BOYD, J., delivered the opinion of the Court.

This is an appeal from a judgment in favor of the appellee against the appellant for injuries sustained by her in getting off a car of the appellant, which she claims was started while she was stepping from it, at the corner of Lafayette avenue and Bloomingdale road. There were notices posted on the cars on this line as follows : "Warning : No one is permitted to ride on the platform, or to get off or on when the car is in motion. Persons are warned of the danger. Cars stop to take on and let off passengers at near sides of cross streets. Those violating these orders do so at their own risk. No officer or agent of the company has authority to waive these regulations." The theory of the appellant is that the appellee violated this regulation by getting off the car before it had reached the corner, when the agents of the company in charge of it were not aware of her attempting to get off. There are two bills of exceptions—the first containing the ruling of the Court on an offer of testimony by the appellant and the other presenting the rulings on the prayers.

1. As a reason for stopping the car before it reached the corner of Lafayette avenue and Bloomingdale road, near which the accident happened, the appellant proved that there was a schoolhouse on the corner which extended back some distance on the Bloomingdale road. After testimony had been produced tending to prove that the car on which the appellee had been riding had stopped in front of the schoolhouse, the appellant offered a paper to show that there was a regulation in force on this line requiring all motormen to stop at the schoolhouse, as they were accustomed to do. The trial Judge stated that it was not admissible unless the appellant showed that the conductor or motorman made this

particular stop in pursuance of the regulation and custom, and counsel for the appellant replied that they did not know who they were. Thereupon the Court sustained an objection to it and declined to permit the paper to be read. It is not in the record and therefore it would be impossible for us to determine whether the appellant was injured by its exclusion or whether it was relevant. When the action of the trial Court is under review for admitting or rejecting a written instrument, the writing itself, or at least so much of it as is necessary to enable the appellate Court to ascertain its legal effect, must be incorporated in the record, 2 *Poe*, sec. 314, and that not having been done the ruling of the Court is not properly before us. But if it was simply an order directing the motorman to stop the cars in front of schoolhouses, we cannot understand how it could be relevant. There is nothing to show that the appellee was aware of the regulation or of any custom to stop at such places, and if this car in fact stopped by reason of such regulation, it would not reflect upon the main question in the case, which we will presently consider. In *Baltimore and Yorktown Road* v. *Leonhardt*, 66 Md. 79, this Court said : "We do not see how the defendant can make its own instructions to its conductors a matter of defense," and under the facts of this case it would seem to be clear that such a regulation as this is said to be cannot reflect upon the alleged negligence of the appellant, or the contributory negligence of the appellee, especially as it is not even shown that the car did stop by reason of this regulation.

2. The plaintiff (appellee) offered four prayers which were granted, and the defendant (appellant) offered thirteen—the third, fifth, tenth, eleventh and twelfth of which were granted, and the others were rejected. Those marked "sixth" and "sixth and one-half" present the questions most relied on by the appellant and hence it will be well to first consider them. The sixth sought to instruct the jury that the regulation notifying passengers that cars stop for them to alight at cross streets is a reasonable one, and that if they found that said regulation was posted in all the cars of the line on which the

plaintiff was injured and that she had read or could have read it, and if they believe she was injured in the act of violating it, that was conclusive evidence of contributory negligence on her part, and the verdict must be for the defendant. The one marked sixth and one-half is the same excepting it also called upon the jury to find "that such regulation notified passengers that cars stopped for them to alight at cross streets *only.*" The construction given the warning by the appellant, as indicated by the clause last mentioned, is not justified by its language. It does not notify passengers that cars stop for passengers to alight *only* at cross streets. Reasonable regulations for the guidance and direction of passengers are not only upheld by the law but oftentimes are of great importance for the protection of passengers, but if it was intended by this regulation to notify passengers that they could get on and off cars at cross streets only, the appellant adopted very obscure terms to give such information, although it could have framed it in language so simple that no one could have mistaken it. There is not a word to the effect that cars would *only* stop at cross streets. In some cities the cars stop at the far side, and in others at the near side of cross streets, but they often stop at other places—such as railroad stations, hotels, theatres and other public buildings. In one of the cases much relied on by the appellant, *Jackson* v. *Grand Avenue Railway Company*, 118 Mo. 199, the notice posted was: "In compliance with City Ordinance, Number 848, revised, *cars will stop at far crossings only*," and if this company intended to warn passengers that they were not permitted to get on and off at any other place than the near side of cross streets, it could at least have inserted the word "only" or some similar term in the warning. As it now reads, it might be well understood to mean that the cars would stop at the near side and not at the far side of cross streets. Those using cars represent all degrees of intelligence, and experience in travelling, and a railway company should not be permitted to couch its regulations intended for the public in language of doubtful meaning, if it proposes to relieve itself of the results of its own negligence by claim-

ing that a passenger has been injured through the violation of one of such regulations.

But irrespective of that, the testimony shows that this car stopped at a point somewhere within fifty feet of the corner. One of the defendant's witnesses said "It wasn't very far from the corner," and the other who testified on the subject said it stopped opposite the kitchen of his house, which was about fifty feet from the corner. The plaintiff said in answer to the question whether she knew that the car was not at Lafayette avenue, "Well I don't know about that part of it; I thought that was the crossing, because he stopped there"—referring to the conductor. Another witness for the plaintiff said in answer to the question as to how far the car was from Lafayette avenue, "Well about the same distance from there that any car should stop from the corner. No cars stop in the middle of the street, but they stop on the near side from the corner, and there is where that stopped." The schoolhouse spoken of is on the corner, and the defendant's testimony showed that the car stopped somewhere in front of that, and the house where Mr. and Mrs. Meushaw, the defendant's witnesses, lived was also on the corner, and ran back about sixty feet. The uncontradicted evidence of the plaintiff and her companion, Mrs. Bordley, shows that the latter signalled to the conductor to stop the car, and that he did so. The latter, in answer to the question by the Court, whether she remembered any bells, or signals being given, at the time the car stopped, said, "Oh we motioned to the conductor to stop, and he pulled his bell." There is no contradiction of the testimony of the plaintiff and her companion that the car was standing still when she started to get off, but according to them, as she was in the act of stepping from the foot-board, "the car gave a lurch and threw her." The only witnesses to the accident offered by the defendant swore that the car was not moving when she fell. One of them said, "she had one foot on the ground and was about to put the other foot down when she went over backwards in the road."

There is little or no conflict between the witnesses, except-

ing that those on the part of the defendant stated that the
car did not move as the plaintiff fell, and they apparently
placed the car further from the corner than the plaintiff and
her companion seemed to think it was. If then we give the
notice posted in the car the construction contended for it by
the appellant (which we have indicated above is not the proper
one), we cannot agree with it as to the effect to be given to it
under the circumstances of this case. As we have seen, the
greatest distance from the corner that any witness placed the car
was about fifty feet. It was somewhere opposite the house that
extended to the corner. There is nothing in the record to con-
tradict the plaintiff in the statement that she thought that she
was at the crossing, and her companion was of the opinion
that they had reached the place to get off the car for Lafay-
ette avenue. If it be true that the signal was given to the
conductor to stop, and he did so, which is not contradicted,
and that the plaintiff then started to get off, it was unques-
tionably the conductor's duty to see that the car was not
started until the plaintiff was off. To excuse his neglect in
that respect by reason of this regulation posted in the car
would be giving it an effect which no Court should sanction.
As the cars stop before reaching the crossings over the streets
on which they are running, passengers are necessarily required
to get out before they are actually on the crossing—it may be
ten, fifteen, twenty or more feet from it where the passengers
get on and off, when the car stops near the crossing. In en-
closed cars they use the rear platform, which necessarily re-
quires them to get off the length of the car from the cross-
ing, and if it stops, after notice is given to the conductor, sev-
eral lengths of the car from the crossing, instead of one, and
a passenger who gave the signal then attempts to alight,
it would not do to permit the agents of the railway company
to start the car in motion without ascertaining whether the
passenger was safe, and to refuse relief to one injured under
those circumstances, merely because it was subsequently
shown that the car was forty or fifty feet from the corner, in-
stead of twenty or twenty-five feet, would establish a most

dangerous precedent.   When a car stops so near the corner as even the testimony of the appellant shows this one stopped, it is not exacting an unreasonable precaution on the part of the company's agents to require them to ascertain whether any of the passengers are alighting, as they might well believe that the car had stopped for that purpose.   They are frequently required to stop by reason of some obstruction on the tracks, and if passengers undertake to get off at unusual places, without notice to the conductor of their intention to do so, and are injured, they will ordinarily have no right to hold the railway company responsible, but when the car stops so near the regular stopping places as would probably cause the passengers to believe that they had reached the place for them to alight, it is asking very little of the company to require the conductor to warn the passengers, or see that none of them are in the act of alighting, before the car is again put in motion.

The case of *Railroad Company* v. *Grant*, 11 App. Cas. (D. C.) 107, announces the law in the clear terms that usually characterize the opinions delivered by CHIEF JUSTICE ALVEY. That learned Judge said "If a street car stops to take on or let off passengers, or stops at a place where passengers may get off or on, though not a regular stopping place, those in charge of the car must wait a sufficient length of time to enable passengers attempting to get off or on, to alight or get on in safety by the exercise of reasonable diligence; and must in any event see and know that no passenger is in the act of alighting, or is otherwise in a position which would be rendered perilous by the motion of the car when again put in motion.   If the employees fail in any of these respects, and injuries result to the passenger from such failure, the company employer is liable."   He had previously said that "It is a settled principle that if a passenger voluntarily alights from a street car in motion, or when at a place or in a position where passengers are not *intended or expected to get off the car*, the passenger so getting off or on the car takes the risk of injury by the sudden starting up of the car, and the employees who

so start the car are not negligent, *if they are ignorant that the passenger is so alighting from or getting on the car. Nichols* v. *Middlesex R. Co.*, 106 Mass. 463. But it is otherwise if such employees have knowledge, or reasonable ground to suppose that the passenger is in the act of getting off the car at the time of so starting it up." Many authorities might be cited to sustain the law as thus announced.

The facts of this case clearly bring it within the above doctrines, as they not only show that the car stopped where the plaintiff might well have assumed it was intended and expected that passengers would get off, but there is ample evidence to show that the conductor knew the plaintiff was in the act of alighting. The prayers marked sixth and sixth and one-half were therefore properly rejected. There is nothing in the cases of *Railroad Company* v. *Wilkins*, 30 Md. 224, and *Baltimore and Yorktown Road* v. *Cason*, 72 Md. 377, in conflict with this conclusion. The regulations referred to in them were not only found to be reasonable and binding on the plaintiffs, but it was shown that the plaintiffs were injured by reason of the violation of those regulations, and hence they were not entitled to recover. The facts were therefore altogether different from those now before us.

From what we have said it is manifest that we think the Court below properly rejected the defendant's first and second prayers—the first being that there was no evidence legally sufficient to show any negligence on the part of the defendant, and the second that from the uncontradicted evidence the plaintiff was guilty of contributory negligence. Without otherwise referring to the fourth, it is sufficient to say that the granting of the twelfth prayer gave the defendant the benefit of everything that it was entitled to that was embodied in the fourth, and therefore the rejection of the latter did it no injury. The seventh referred to the facts set forth in the sixth, which we have said was properly rejected, and therefore the jury could not have known what those facts were, but it ignores all knowledge of the conductor that the plaintiff was alighting, and was therefore properly rejected for that, with-

out stating other reasons. The eighth is defective for several reasons, but we need only refer to the concluding part of it, which asks the Court to instruct the jury that there was no evidence that the plaintiff had notified the conductor of her intention to alight at that place. If what she and Mrs. Bordley said was true, he unquestionably had notice. It is sufficient to say that the ninth was properly rejected because there was no evidence that the employees in charge of the car started it without notice of the plaintiff's intention to alight, for as we have seen, the only evidence offered by the defendant on the subject was to the effect that the car was standing still.

The appellant concedes that the principles announced in the first and second prayers of the plaintiff were correct, but contends that they were too general and misleading under the facts of this case. But there being no evidence that the plaintiff was violating a regulation of the company that was known to her, it was not necessary to refer to that question in the prayer, and as the defendant had a prayer granted which instructed the jury as to the evidence it offered—namely that the car was standing still when the plaintiff alighted—the fact that the first and second prayers of the plaintiff did not more specifically refer to the defense of the defendant did not injure it in any way that it was entitled to be protected from. The third only announces the degree of care required of a passenger and we do not understand the fourth to be objected to. It relates to the measure of damages. As we find no error in the Court's rulings, the judgment must be affirmed.

> *Judgment affirmed, the appellant to
> pay the costs.*

(Decided June 29th, 1903.)