CUMBERLAND & WESTERNPORT TRANSIT
COMPANY *v.* JOSEPHINE METZ.

AMERICAN OIL COMPANY *v.* JOSEPHINE METZ.
[Nos 63, 64, October Term, 1929.]

428 

 █

 

 

 

 

*Decided January 23rd, 1930.*

 

 ██

432

The cause was argued before Bond, C. J. Urner, Offutt, Digges, Parke, and Sloan, JJ.

*Walter C. Capper,* for the Cumberland & Westernport Transit Company, appellant.

*Edwin H. Brownley* and *George Henderson,* for the American Oil Company, appellant.

*Lewis M. Wilson* and *A. Taylor Smith,* for the appellee.

Sloan, J., delivered the opinion of the Court.

We have here two appeals in one record, one by each of two defendants, from a joint judgment against them in favor of the plaintiff, appellee, in which the defendants assail each other much more vigorously than they resist the claim of the plaintiff. The plaintiff was seriously and permanently injured while a passenger on a motor bus of the Cumberland & Westernport Transit Company, one of the appellants, as a result of a collision of the bus with the American Oil Company's truck, and each of the appellants contends that it was the other's fault, the oil company also contending that there was such contributory negligence on the part of the plaintiff as would preclude a recovery by her against it. There are thirty-six exceptions in the record, of which the last six are to the rulings on the prayers, and the others, excepting a motion to withdraw a juror and continue the case, to rulings on the evidence. It may help to avoid confusion if all the prayers are reported, and this the reporter is requested to do.

The transit company's first prayer asked for an instructed verdict on the ground that no legally sufficient evidence has been offered against it, and the truck company's second prayer asked a verdict because of the uncontradicted evidence of the contributory negligence of the plaintiff, and it is, therefore, necessary to review the facts in order to ascertain whether

there is any legally sufficient evidence against the transit company, and whether the plaintiff contributed to the accident to such extent as to justify a directed verdict against her as to the oil company.

On the night of December 16th, 1927, about 7.45 o'clock, the plaintiff became a passenger on a public motor bus of the Cumberland & Westernport Transit Company at Frostburg, Maryland, to be carried over the state road to Lonaconing, a distance of eight miles in a southwesterly direction, where she resided. About midway of the distance, at the first curve in the road above Ocean Mines, the bus collided with a Chevrolet truck of the American Oil Company, with the result that the plaintiff, appellee, was so seriously injured that no contention is made by either defendant as to the nature and extent of her injuries.

The plaintiff was seated on the left side of the bus, the second seat from the driver, Thomas Martin, who operated the car from the front seat on the left. On the first seat immediately behind the driver all the way from Frostburg to the scene of the collision was a Miss MacMillan.

Harry E. Minnicks, the driver of the American Oil Company's truck, who had been as far as Keyser, West Virginia, was on his way home to Cumberland on the same state road by way of Barton and Lonaconing, when his truck and the bus met at Ocean, eight miles from Barton, four from Frostburg, and four from Lonaconing. Both the bus driver and the truck driver contend and swear that the other was on the wrong side of the center of the road, and each of them swears that he, himself, was on the right side of the center of the road.

The collision occurred at a sharp curve, the bus being on the outside of the road and the truck on the inside. The concreted part of the road is approximately twenty feet in width, four measurements on the curve twenty feet apart showing respectively twenty feet three, four, and five inches, and one nineteen feet three inches. On the inside of the curve the space from the concrete to the bank rising on the right going to Frostburg varies from twenty inches to three

feet; on the other side it varies from three and a half to eight feet from the concrete to the edge of a steep bank. The bus was ninety inches in width, the truck eighty-four inches.

The truck driver testified:

"I was running along, rounding the curve, and as I hit the apex I spied a light. The glare coming showed away over on the other side and I kept in to my right around the curve as close as I could get on account of the embankment, the rocks which stick out, and driving a stake truck, with a few inches overhang sticking out, you have to be careful—not a very nice truck to drive on that account—I got over as far as I could get and as I cut around on what I call the peak of the curve I spied the bus which I judge was running about twenty or more. I saw he was over on the center of the road and I didn't have space to make it without I would run into the rocks, so the first thing I did I grabbed the emergency and applied my brake and by that time the crash came. When I first saw him he was over on my side of the road, what you would ordinarily call 'hogging' the road. There was no chance for me to get off at all to the right of the road. If I would get off to the right of the road I would probably take chances of upsetting my truck in front of the bus. Looking at the pictures handed me the one marked 'To Frostburg' and the other marked 'To Lonaconing', I have marked both of them with a round mark with a cross in it to show as nearly as I can where the accident actually occurred. At the point I speak of as the peak of the curve and immediately to the right of me and on my side of the road there is a rocky embankment. As I was rounding that curve I kept as far to the right as I possibly could. At no time prior to the actual happening of the accident did I get over beyond the center of the road. When I first saw the bus he was right in the center —what any one nearly would call hogging the road, that is, he didn't leave enough room for me to pass.

"(Court): Well that isn't the question. Where was he? A. He was in the center of the road. Riding the center of the road. He was riding practically the center of the road. He

didn't give me room enough to pass. Half of the bus was on my side of the road."

This is the only evidence which places the bus or any part of it on the left of the center of the road. "All vehicles, motor, horse-drawn or otherwise, when being driven upon the highways of this state upon meeting others, shall turn to the right of the center of the highway so as to pass without interference." Acts of 1920, ch. 506, sec. 163; Code, art. 56, sec. 209 (since the accident amended by Act of 1929, ch. 224). There is no liability unless the act constituting the violation of the law is a proximate cause of the injury. *Greer Transportation Co. v. Knight,* 157 Md. 528, 538, and cases there cited. In this case, if the testimony of Minnicks be true, there would have been no collision if the bus had been on the right of the center of the road. But, says the transit company, "In the face of the testimony of the witnesses as to his condition and as to the manner in which the accident happened, his testimony is incredible and unworthy of belief."

There is testimony of several witnesses that Minnicks was under the influence of intoxicating liquor. He himself says he was not. He stopped at a garage in Barton, six or seven miles below Ocean Mines, about seven o'clock, and remained there twenty to twenty-five minutes, and in about half an hour he was in the wreck. He said he had taken a drink of "moonshine" whiskey about four o'clock at Keyser, W. Va., out of the bottle found in his car after the collision, which belonged to Spiker, his helper, and took another drink just after leaving the Barton garage. The testimony of three witnesses who saw him at Barton was that he was sober, and this is not contradicted, and, so far as the record shows, if he became intoxicated, it was after he left Barton. Immediately after the accident he went to the house of Timothy Kilduff, a manifest clerk of the Consolidation Coal Company, who testified: "Mr. Minnicks used the phone and reported the accident to the state police and also to Mr. Shaffer. (Mr. Shaffer is the local manager of the American Oil Company.) He used the telephone several times * * * I would say he was in my home an hour at least. * * * I heard him use the

name of Gearhart or Gephart. (Gearhart was the name of the state police sergeant.) He was asking for them and he was talking about the accident and asking for somebody to come and look at it before it was cleared up." Asked as to the condition with reference to sobriety, Mr. Kilduff said: "Well, I couldn't see anything to lead me to think that there was anything wrong with the man, only he was very anxious to report the accident." He also said: "He did not stagger at all." The state police charged Minnicks with driving a car while intoxicated, he was found guilty and took an appeal, which, on advice of his counsel, was dismissed.

It is apparent, therefore, that there is a real controversy as to whether Minnicks was drunk or sober at the time of the accident, and that it would be passing on the weight of evidence and the credibility of a witness for this court to say as a matter of law that the testimony of such a witness has no probative force. As said in *State, use of Steever v. Union R. Co.*, 70 Md. 69, 77: "It has been held in this state, as an axiom of the law, ever since the institution of courts of justice, that it is the exclusive province of the jury to decide on the credibility of witnesses and to determine the weight of testimony." In addition to this, there is evidence, which will be hereafter considered, that the bus driver was not driving with that degree of care which his employment as the driver of a public bus required.

But, says the transit company, "If * * * the bus was traveling astride the center of the highway, and he could not pass it with his truck, there would have been a head-on collision." It must be remembered that the only witnesses who swore positively to the respective positions of the bus and truck with reference to the center line of the road were the two drivers, and each of them testified that he was not across the line. This collision did not happen on a straight road; it was on a sharp and dangerous curve, the bus on the outside, while the truck was on the inside, so that they were approaching each other at an angle. The result was what railroaders call a "side swipe," and they occur in just such places as this. The damage to the bus was on the left side, from

about the second seat to the rear. William H. Shaffer testified as to the condition of the truck: "There was not a whole lot of damage done to the right side. I really did not see any damage at all to the left side. The only damage was to the corner of the left side where they collided. I don't think the front part was struck at all by the collision. * * * There was some slight damage to the fender and, I believe, the steering apparatus. * * * It is a Chevrolet ton truck, with a stake body; just had sideboards with little racks. The tires on the truck were in good condition." The fact that the steering gear was damaged would cause the driver to lose control of the truck, and its position when it upset would furnish little or no information of its location at the point of the collision. The steering gear of the bus was not damaged. The point of impact on the bus being to the rear of the steering gear would account for the driver's control of the bus after the collision. We are therefore of the opinion that we cannot draw any inference, as a matter of law, from the relative positions of the vehicles after the collision, in view of the contradictory evidence of their locations at the time of contact.

The transit company has cited several cases in support of its contention that the testimony of Minnicks should be rejected as having no probative value, the most recent citation of the transit company being *Gitomir v. United Rys. Co.,* 157 Md. 464, where it said: "The testimony of the witness that she looked and did not see the car must be rejected as unworthy of belief, because if a witness testified to having looked and not having seen what, if the witness had looked, she must have seen, the conclusion is that she did not look, or did in fact see the car approaching the point of the accident." This was the case of a collision of an automobile with a street car, the latter approaching the automobile from the rear as it was turning from the curb toward the car tracks. The same principle was applied in the other cases cited, except in the case of *Title Guaranty & Surety Co. v. Poe, Receiver,* 138 Md. 446, which was an equity case, wherein on a question of fact the court may pass on the

weight of evidence and the credibility of witnesses. *Breitinger v. Heisler,* 155 Md. 157, 165. In this case the witness Minnicks stated as a fact that he was on the right of the center of the road and that the bus driver was on the center, and it was for the jury to say whether, under all the evidence, this was true, and to pass on the sobriety of the truck driver. The evidence against the transit company in our opinion should have been submitted to the jury, and the first prayer of the transit company was therefor properly rejected.

Taking up the other prayers in their order, we find no objection made at the argument or mentioned in the brief of either defendant to the plaintiff's A and B prayers, except the transit company's general objection that the case against it should not have gone to the jury. The first, or A prayer, lays down the rule of damages approved in *Gordon v. Opalecky,* 152 Md. 536, 550, and *United Rwys. & Elec. Co. v. Dean,* 117 Md. 686, 701; and is approved here. The second, or B prayer, properly granted, defines the duty of a carrier to a passenger, as approved in *Phila. W. & B. R. Co. v. Anderson,* 72 Md. 519; *United Rwys. & Elec. Co. v. Hertel,* 97 Md. 382, 395; *United Rwys. & Elec. Co. v. Rosek,* 107 Md. 138, 143.

The plaintiff's C prayer is the one to which the transit company most seriously objects, and that is to the application of the doctrine of *res ipsa loquitur* to the facts in this case. The transit company contends: (1) That even though the relation between it and the plaintiff was that of carrier and passenger, the plaintiff must show that the defendant by its act or by its omission has violated some duty incumbent upon it which caused the injury complained of; and (2) that the doctrine does not apply to the carrier where both agencies causing the collision are not within the control of the carrier.

The duty of the carrier, the burden on the plaintiff, and the facts necessary to raise a presumption of negligence, are so well stated by Chief Judge McSherry in *Western Md. R. Co. v. Shivers,* 101 Md. 391, 393, that it will bear repetition. He there said: "It is undoubtedly true that a carrier is not an insurer of the safety of his passengers. He is bound to use

the utmost care and diligence which human foresight can employ. *City Pass. Ry. Co. v. Nugent,* 86 Md. 356. This is the limit and the measure of the duty which he owes to the passenger. If, in spite of the observance of that degree of precaution, an injury happens to the passenger from an act of God or a *vis major,* no action in such circumstances can be maintained. Negligence, and not the mere fact of an injury, is the foundation of the passenger's right to recover. Direct evidence of negligence is not necessary, because negligence, like any other fact, can be established by the proof of circumstances from which its existence may be inferred. The relation of passenger and carrier being established, then, if it should appear that the accident occurred from some abnormal condition in the department of actual transportation, the law raises the presumption that the abnormal condition had its origin in, or was referable to, some antecedent or coincident omission of an imposed duty."

Inasmuch as we have, in passing on the transit company's first prayer, in addition to the conceded fact of the relation of carrier and passenger, held that there was evidence of the transit company's active negligence sufficient to take the case to the jury, the plaintiff's "C" prayer should be sustained, unless the second contention of the transit company removes the presumption of negligence against it, assuming, of course, that the prayer is proper in form under the facts of this case.

The transit company's contention is that, where the two agencies which caused the collision are not both within the control of the defendant carrier, the presumption of negligence does not arise. The authorities are not so uniform in this country that this can be laid down as a hard and fast rule. According to 5 *Ruling Case Law,* 79, 80, "In the case of collisions between the car of a carrier and vehicles on the street not in any way under the control of the carrier, there is a conflict of opinion, some authorities holding that the usual presumption against the carrier arises, while others take the view that in such cases the burden rests upon the plaintiff to prove negligence; and even the authorities which apply to this class of cases the doctrine of *res ipsa loquitur* to make out

a *prima facie* case, where a passenger is injured by collision with a vehicle of a third person, recognize that the circumstances of the accident or the evidence given in the case, may be such as to rebut any presumption of the carrier's negligence." A reference to the cases and authorities cited leads to the conclusion that whether the doctrine is to be applied to the carrier depends on whether it is wholly without fault, but that it is not excused from the burden of producing evidence to show that it was not its act or omission which caused the injury. The doctrine was applied by this court in *North Baltimore Pass. Ry. v. Kaskell,* 78 Md. 517, which was a case wherein the plaintiff was injured as a result of the collision of a horse car of the defendant with a freight car of the Western Maryland Railway Company. The horse car had left the track and was hauled over the cobbles for two blocks, when it swung around and collided with the freight car, which was standing on a side track of the railroad company. There was no question there but that the negligence was that of the defendant. The rule was also applied in *Jones v. United Rwys. & Elec. Co.,* 99 Md. 64, wherein a street car was in the act of passing a wagon loaded with marble slabs, one of which projected far enough to graze the car and injure the plaintiff, a passenger. So that in this state the mere fact that there was a collision producing the injury did not operate to take the cases out of the rule.

The plaintiff's "O" prayer is the prayer offered by the plaintiff in *Pittsburgh & C. R. R. Co. v. Andrews,* 39 Md. 329, and there held defective, because it omitted the question of the plaintiff's contributory negligence, which had been raised by the evidence. The opinion of the court said that the prayer as offered stated the law as announced in *Stokes v. Sallonstall,* 13 Peters, 181, 10 L. Ed. 115; *Stockton v. Frey,* 4 Gill, 406, and *Balto. & O. R. Co. v. Worthington,* 21 Md. 275, but the prayer might have applied in these cases because there was no proof and no question of contributory negligence of the plaintiff. The prayer as submitted here was also offered in *Balto. & O. R. Co. v. Mahone,* 63 Md. 141, and, as modified by the trial court in adding the words, "or that

the accident would have been avoided by ordinary care on the part of the accused," was approved. The prayer, as amended in the *Mahone* case, was approved in *North Baltimore Pass. Ry. Co. v. Kaskell*, 78 Md. 517. In this case, however, the transit company does not charge the plaintiff with any negligence or want of care. The C prayer as granted in this case was submitted in the case of *Strasburger v. Vogel*, 103 Md. 85. That was a suit for injuries sustained by the plaintiff from being struck by a brick which had fallen to the sidewalk from a chimney on the defendant's building. The opinion of Chief Judge McSherry said: "The instruction deliberately ignored the fact which the plaintiff had proved, that an independent agency had intervened and had caused the bricks to fall, and permitted a recovery upon an inference of negligence arising solely from the mere fact that the bricks fell, unless the defendant satisfied the jury that the falling of the bricks was not caused by his negligence. If the plaintiff's case had rested exclusively upon an inference of negligence deduced from the single fact that the bricks fell without an apparent or assigned cause; and if the defendant had, by way of answer to that theory, relied upon the intervention of an independent agency, the instruction would have been correct, because the presumption of negligence arising from an unexplained falling of the bricks would have established a *prima facie* case which the defendant could only have rebutted by showing a state of facts which destroyed or negatived that presumption. Between the two conflicting theories it would have been the province of the jury to pass. But when the plaintiff himself shows that the injury complained of must have resulted either from the negligence of the defendant or from an independent cause for the existence of which the defendant is in no way responsible, he cannot be permitted to recover until he excludes the independent cause as the efficient and proximate cause of the injury; and an instruction which allows a recovery without any reference whatever to such efficient and proximate cause is essentially misleading and erroneous."

The declaration charges that it was the duty of the transit company to carry the plaintiff safely to and deliver her at her destination and to use due and proper care in the operation and management of its bus, so as to avoid collision with any other vehicle, and of the oil company so to operate its truck as to avoid collision with any other vehicle, and that, because of their failure so to do, both defendants allowed their vehicles to collide with each other and thereby produced the injuries complained of. The testimony offered on behalf of the plaintiff showed that, as against the transit company, she relied on the presumption of negligence against the transit company, the only evidence adduced by her against it being that it had not exercised the degree of care required by the carrier, because of the distraction of the driver on account of the attentions of and to a young woman in the seat next behind him, with whom a conversation was being carried on, and the failure of the driver, according to some witnesses, denied by him, to lower the curtain behind him to cut off the glare from the lights inside the car, the driver testifying, "You can't see to drive if the curtain isn't down." Aside from this testimony, the evidence of the accident offered by the plaintiff was as to the intoxicated condition of the truck driver and his negligence, the plaintiff calling the bus driver to testify on her behalf. The plaintiff's C prayer was good as far as it went. At the instant of the collision there arose the presumption of negligence against the transit company, from which it could only extricate itself by showing it was not in fault. The plaintiff, however, went on to show there would not have been a collision but for the negligence of the truck driver, and, offering evidence of this, she could not ask for a verdict under the C prayer, unless the question of the negligence of the oil company, its agents and servants, was also submitted, as a cause of the accident. It was a fact in evidence which could not be ignored, under the decision in *Strasburger v. Vogel, supra.*

The plaintiff's D prayer, which submitted to the jury the matter of the oil company's negligence and the contributory

negligence of the plaintiff, and the G prayer, which asked a verdict against both defendants, if the jury should find their negligence concurred to produce the injuries complained of, were properly granted. *Gordon v. Opalecky,* 152 Md. 536, 549. There is no inconsistency in the approval of the G prayer and the disapproval of the C prayer.

Negligence is not presumed against the oil company. 5 *R. C. L.* 80; *Plumb v. Richmond Light & R. Co.,* 233 N. Y. 285. And as between the defendants there can be no question of presumed negligence and each is at liberty to show that the accident was the fault of the other. Each of the defendants offered legally sufficient evidence of the other's negligence as the proximate cause of the plaintiff's injuries, so that it was for the jury to say whether either defendant was at fault, or whether their negligence was concurrent.

The transit company's second prayer, which was granted, was the defendant's second prayer in *United Rwys. & Elec. Co. v. Dean,* 117 Md. 686, 691, 702, where it was approved, and is as applicable to this case as it was in the *Dean* case.

The transit company's third prayer, which was rejected, was the defendant's fourth prayer in the *Dean* case, where it was approved, though not the subject of the appeal in that case, it having been granted at the instance of the appellant. No error was committed in its rejection here, as every element contained in the prayer is included in the transit company's second and sixth prayers, which were granted.

The transit company's seventh prayer was properly rejected, as it sought to eliminate the evidence that the young woman seated immediately behind the driver had been engaged in conversation with him, according to the testimony of the plaintiff, "from shortly after we left Frostburg until the accident happened." She testified further: "I did not comment to the bus driver about his conversation with Miss MacMillan or speak to him about it, but I felt apprehension on the way down from Frostburg. I was in the second seat behind the bus driver and the curtain was not down. I could have complained to him but I hesitated; I didn't like to do

that." Mrs. Della Monnett testified: "I noticed the driver of the bus and noticed a lady talking to him and I was nervous about it. * * * She was sitting with her head over his shoulder and she sat that way from the time we left Frostburg until the accident happened." Called on behalf of the oil company, she testified that Miss MacMillan was talking to the bus driver all the way from Frostburg, "he was sitting straight, but once in a while he turned his head around and talked to Miss MacMillan." Another witness called by the oil company said she noticed the driver and the young woman talking to each other but did not pay much attention to them.

The transit company asked an instruction that the facts so testified to constitute no legally sufficient evidence tending to prove negligence directly contributing to the accident, and the court was right in refusing the instruction. The basis of the action against the carrier is the breach of its duty toward the passenger to exercise the "utmost care and diligence which human foresight can use, though not an insurer of" his safety. *Phila. B. & W. R. Co. v. Allen*, 102 Md. 110; *City Pass. Ry. Co. v. Nugent*, 86 Md. 349, 356. It adds nothing to the safety of passengers and may subtract much for a bus driver, entrusted with the lives and safety of passengers, to be diverted from strict attention to his duties by the social attentions of his friends. Whether the attentions of the driver's friend at the time of the collision contributed directly to the plaintiff's injuries is a question for the jury, and is evidence of the degree of care or carelessness with which the bus was driven. "When carriers undertake to convey persons by the powerful, but dangerous agency of steam (electricity or gasoline), public policy and safety require that they be held to the greatest possible care and diligence. * * * The personal safety of the passengers should not be left to the sport of chance or the negligence of careless agents." *Phila. & R. R. Co. v. Derby*, 14 How. 468, 14 L. Ed. 509.

The oil company's second prayer was a request for a directed verdict for it because of the contributory negligence

of the plaintiff, based on the evidence quoted in the discussion of the transit company's seventh prayer. The oil company does not indicate whether the contributory negligence of the plaintiff presupposes its negligence or that of the transit company, or both. The oil company has cited numerous cases out of the state, in which the passenger was held to have contributed directly to his injuries by reason of failure to interfere with the driver or protest against reckless or careless driving. But the decisions in such cases are not at all uniform and depend largely upon the facts of each case, as will appear from the cases and annotations in 45 *A. L. R.* 293, and 31 *A. L. R.* 1197.

The point raised by the oil company's request is aptly illustrated in *Balto., C. & A. Ry. Co. v. Turner,* 152 Md. 216, where the guest's failure to warn the driver of an approaching train at a crossing was the reason for offering a similar prayer. In that case this court, in the opinion of Judge Offutt, said: "Acts or omissions which might amount to gross negligence on the part of the driver of an automobile might not be negligent at all on the part of a passenger therein, because ordinary care would require the driver, operating such a potentially dangerous vehicle as an automobile on a public highway, to exercise a more constant and intense vigilence to detect danger and to avoid injury to himself or others than could reasonably be expected or required from a mere passenger. One riding in an automobile, whether as an invited guest in a private car or as a passenger in a public conveyance such as a taxicab, cannot under all circumstances be expected to be constantly on the lookout for possible danger and to distract and confuse the driver by a steady flow of warning admonitions." See also *Dorchester County v. Wright,* 138 Md. 577. The plaintiff did say she "felt apprehension" and "could have complained to" the driver, but "hesitated" because she "didn't like to do that," and Mrs. Monnett said she was "nervous about it." The plaintiff testified that the bus "didn't go off its course at all" that she could remember, and Mrs. Monnett, that "the bus was traveling that evening at its usual rate of speed," and said, "I

suppose the bus was on the right side of the road," so that, except for the attentions of the driver and the young woman to each other, there was no evidence of want of care and no evidence of recklessness except the disputed testimony as to the curtain. There were ten or twelve passengers in the bus, one of whom, Miss Sarah Humphreys, testified that she did not notice whether the driver was engaged in conversation with any one, "never noticed him turn back or anything," and Mrs. Ann Miller, testifying for the oil company, "noticed that lady talking to this man," "didn't pay much attention, only he was talking to her; didn't notice whether he was turning his head."

We fail to see any such a feature of recklessness and disregard of her own safety in this as to say as a matter of law that the plaintiff was guilty of contributory negligence directly contributing to the accident. *Hempel v. Hall,* 136 Md. 174. It was a real controversy as to whether the bus driver was negligent at all, and was not on the right of the center of the road where the law required him to be. The only witness testifying that he was across the center line was the truck driver, and it was testified by several witnesses that the latter was intoxicated, one witness saying he was "very drunk."

The prayer was for an instruction that the plaintiff herself was beyond question guilty of contributory negligence, meaning that she was responsible for negligence of which the driver was guilty. But on the facts of this case it would be assuming too much for this court to say as a matter of law that the plaintiff's failure to remonstrate with the driver caused or contributed directly to her injuries, when it was a question for the jury as to whether he was negligent, the law requiring of him, to avoid injury to himself and others, greater vigilance than could reasonably be expected of a passenger (*Balto., O. & A. Ry. Co. v. Turner, supra.*), and the oil company's second prayer was therefore properly refused.

The oil company's first prayer should have been, as it was, refused. There was evidence that the truck driver was under

the influence of liquor, and as intoxication is a fact which any one may observe, it was for the jury to pass on its weight. *Md. & Pa. R. Co. v. Tucker,* 115 Md. 43, 51.

The oil company's seventh prayer in effect instructs the jury that, if they should find the bus driver had been engaged in conversation with a passenger and was driving in a negligent and careless manner, without keeping a constant lookout for other vehicles, and the plaintiff was aware of such conduct, then it was her duty to protest, and if she did not protest she cannot recover. We have not said her conduct under the evidence precluded a recovery, and in effect this is what the prayer says. As we have already said, we do not declare that the plaintiff's failure to protest was *per se* contributory negligence, but that it was a question for the jury which was submitted by the oil company's fifth prayer as favorably at it was entitled to ask under the evidence.

The transit company excepted to the granting of the oil company's ninth and tenth prayers. No authority was cited nor any reason given for this objection. They present clearly the oil company's theory and defense, that if the jury should find the injuries sustained by the plaintiff were due to the bus driver's negligence, the plaintiff could not recover against the oil company.

The oil company's eleventh prayer was a request to instruct the jury that, if they should find the truck driver was slightly intoxicated, but not drunk, such slight intoxication was not evidence from which the jury might infer want of ordinary care and prudence on his part. This was an effort to apply to an automobile accident the degree of intoxication which was applied to the plaintiff, a passenger, against a railroad company in the case of *Balto. & O. R. Co. v. State, use of Chambers,* 81 Md. 371, 387. Because a prayer is good under the facts of one case does not mean that it may apply to the facts of any other case. It is a misdemeanor to drive an automobile "when intoxicated or at all under the influence of liquor or a drug." Code, art. 56, sec. 197. The act which constitutes the violation of a statute or rule of the road may be shown as evidence of proximate cause. *Gittings v. Schenuit,*

122 Md. 282; *Hopper, McGaw & Co. v. Kelly,* 145 Md. 161; *Greer Transportation Co. v. Knight, supra.* The statute was designed to protect the users of the roads of the state against injury, and is a means to that end. The question of the truck driver's sobriety was so involved in the charge of negligence against the oil company that it was a factor to be considered by the jury whether, and to what extent, his intoxication, if any, contributed to the plaintiff's injuries; and in so determining his sobriety or intoxication the jury should be free to form its own judgment on the evidence. The prayer was properly rejected in this case.

The oil company's exceptions 1, 2, 5, 6, 10, 11, 14, 15, 17, 18, 19, 20, 21 (no twenty-second exception in record), and 23, were all to the admissibility of questions concerning the sobriety of Harry E. Minnicks, the truck driver. Some were to the finding of the liquor in the truck, some as to whether witnesses smelt liquor on the driver's breath, but most of them were that he was drunk or had been drinking, and were all admissible as statements of a fact of which men generally are cognizant. *Md. & Pa. R. Co. v. Tucker, supra.*

Its exception 3 was to an objection sustained to the question put to Thomas Martin, the bus driver. "Why was it that you did not see this truck just before he struck you?" and 4 to a like ruling on the question, "You had known Miss MacMillan before this accident, had you not?" This was manifestly an inquiry as to whether the reason he did not see the truck until within twenty feet of it was that he was talking to Miss MacMillan. The answers to both questions are found in his testimony when called later by the transit company, and therefore not excluded from the evidence, though both questions were admissible as reflecting upon the charge of negligent driving of the bus.

Exception 12 was because Dr. Thomas W. Koon was asked what he found when he examined the plaintiff, and his answer that he "found that she was quite a cripple" (followed by a lengthy statement as to how plaintiff was injured). A physician can always testify to facts ascertained by a personal examination. *Jones on Evidence* (3rd Ed.), sec. 378.

The oil company's twenty-fourth exception was to the overruling of an objection to a question to the bus driver, Martin, who was asked to "tell what happened in his own words." We are not advised as to the ground of the objection, on which the court properly ruled.

The twenty-fifth exception was on a motion to strike out a statement of Robert Shuck, a witness for the transit company, that the tracks which he identified "showed them right up to the bus." He was at the scene of the accident within thirty-five minutes after its occurrence. The evidence was that the bus had not been moved from the time the driver had brought it to a stop, and there was no evidence that any other bus could have made the tracks, and under the facts of this case it was admissible.

The oil company stresses an objection sustained to a question to Henry G. Winters, at whose garage in Barton Minnicks had stopped half an hour before the accident: "Did he seem to be at all under the influence of liquor?" Record notes "objected to"; then by the court: "He may state whether there was anything unusual about him." The question immediately preceding was as to Minnick's condition as to sobriety, which Winters answered "Well, I couldn't see any difference in him that evening from any other time." To the question objected to, as amended by the suggestion of the court, he answered: "No, sir; I didn't see any difference in him from the time he was working there." The only impression we get from this is that the witness thought he was sober, and that was the purpose of the question.

Exception 27 was to a question to Timothy Kilduff: "What sort of a curve is this, Mr. Kilduff, of which you have been shown the pictures?" to which an objection was sustained. We are not informed as to the reason of the objection, nor any for the ruling. The pictures in evidence show what kind of curve it was better than a witness could tell, so no harm was done.

Exception 28 was on an objection to the question, "What did you do about that appeal?" He had been arrested, on a charge of operating the truck while under the influence of

liquor, found guilty, fined, and took an appeal. His answer was that he dismissed the appeal on advice of counsel. No error. *Amusement Co. v. Spangler*, 143 Md. 98, 106; *Nelson v. Seiler*, 154 Md. 63, 75.

Exception 7 was on an objection to the action of the court on its own motion striking out the answer of Thomas Martin, the bus driver, to a question as to whether he had been talking to any one at the time of the collision. This was properly stricken out, as it was not cross-examination of anything which had been asked of him when called by the plaintiff.

Exception 8 was to the action of the court in striking out the testimony of Walter W. Wittig as to the manner in which the oil truck was driven at Midland, where he had passed it on a detour about a thousand yards southwest of the place of the accident. This testimony was properly stricken out, as the jury could not draw any inferences from it, the evidence showing it was not on the state road but was on a detour. There was no testimony that the conditions were at all similar; it would raise an issue not involved in this case, and would virtually involve the trial of another offense.

Exception 9 of the transit company was to the action of the court in striking out the testimony of Walter Wittig regarding the condition of Minnicks, the truck driver, when he saw him at the scene of the accident on Wittig's way back to Frostburg. Wittig said, among other things, "I judged by the way he was acting he was either very much excited or very drunk," and then that there was quite an argument as to whose fault it was. Asked whether he was drunk or not, or appeared to be drunk, he answered: "Yes, sir." In *Md. & Pa. R. Co. v. Tucker, supra,* where a witness answered regarding the intoxication of the plaintiff in that case, "I don't know whether I can judge or not," he disqualified himself from afterwards giving as his judgment that he appeared to be under the influence of liquor. As stated in that case, drunkenness and intoxication are facts about which men generally may from their observation testify, and for this witness first to have said he did not know whether he was drunk or excited and then, eliminating the excitement,

to say that he appeared to be drunk, would render his final statement inadmissible under the decision in the case last cited. The same ruling would apply to exception 16 on a question asked the witness Leslie Handly. Exception 29 was on the exclusion by the court of a question asked George Gearhart, of the state police, in which the court properly ruled, as the question asked had been previously answered by the witness several times.

Exception 30 of the transit company was on a motion to withdraw a juror and continue the case because of the absence of some witnesses for the transit company, who were out of the state for some time before the trial and who could not therefore be summoned, although summons had been issued for them a considerable time before the trial. In the course of the trial an affidavit of David D. Price, vice-president and manager of the transit company, was presented, in which was set forth just what efforts had been made to secure the attendance of the witnesses; that summons had been issued on May 3rd, eleven days before the affidavit was made; that when issued the officers and attorney of the company did not know any of the witnesses were absent from the state, and had not been informed by the sheriff that they could not be found until after the beginning of the trial. The evidence of one of these witnesses, William Merrbach, was had by deposition and appears in the record. Ordinarily this is a matter that rests in the discretion of the court and is not appealable. As a rule requests for continuances are made before the beginning of trials, for which provision is made by article 75, sections 62, 63, and 64, of the Code. *Harris v. State,* 141 Md. 530. The request here was made during the course of the trial, and there is no sound reason presented to us why the court should have stopped the trial in order to have allowed the transit company to make an effort to secure the attendance of the witnesses, an effort which in the end might have been unsuccessful. The plaintiff was entitled to have her case tried, and we do not find that the court in this case abused its discretion by refusing the motion. The transit company cites *Nelson v. Seiler,* 154 Md. 63, as authority

for the contention that such a motion is reviewable. In that case there had been a motion by the defendant to withdraw a juror and continue the case for the misconduct of the plaintiff's counsel to the prejudice of the defendant, this court there saying: "If the prejudicial misconduct is such that it could not adequately be cured by an instruction, a refusal of the only measure of protection left to the moving party, a termination of the trial, should be reviewable on appeal." The reasons assigned in that case for the granting of the motion are so at variance with the conditions in the instant case that the ruling in that case can hardly be considered as a precedent in this.

We find no reversible error in any of the exceptions taken by the transit company except the action of the trial court in granting the plaintiff's C prayer because it omitted the oil company as an intervening cause, and no error in any of the exceptions taken by the oil company. This means a reversal of the judgment against the Cumberland & Westernport Transit Company and an affirmance of the judgment against the American Oil Company. Code, art. 5, sec. 26; Acts of 1920, chapter 229; *Gross v. Wood,* 117 Md. 362; *McNamara v. Pabst,* 137 Md. 468, 475; *Meyers v. Shipley,* 140 Md. 381; *Pollock v. Watts,* 142 Md. 403, 407; *Kvedera v. Mondravitzky,* 145 Md. 260.

> *Judgment against the American Oil Company in No. 64 affirmed, and judgment against the Cumberland & Westernport Transit Company reversed, and new trial awarded in No. 63; one-half the costs to be paid by the appellee and one-half by the American Oil Company.*

On motion for re-argument:

The American Oil Company has filed a motion for re-argument in this case, wherein it complains that the decision denies it the rights to which it is entitled under chapter 539

of the Acts of 1927 (Code, art. 50, sec. 12A), which provides that "where a judgment has been entered against two or more joint defendants in an action *ex delicto,* said defendants shall be subject to contribution between them."

The judgment appealed from in this case was reversed and a new trial awarded as to the Cumberland and Westernport Transit Company, and affirmed as to the American Oil Company, on the authority of the Acts of 1920, ch. 229 (Code, art. 5, sec. 26).

If the oil company is right in its contention that it is deprived of the benefit of the Acts of 1927, ch. 539 by the action of this court, then under no circumstances could a plaintiff ever receive the benefit of the Acts of 1920, ch. 229, where a judgment is recovered against plural defendants, and a reversal had as to any of the defendants. To yield to the oil company's contention on the motion filed would nullify the Acts of 1920, ch. 229. This anomalous situation has been created by the acts themselves, and, so far as we consistently can, this court will give effect to both statutes. The plaintiff was not obliged to sue both defendants; each of them was charged with negligence, and she might have sued both in separate suits, or one and not the other. If she had sued the oil company and not the transit company, the oil company could have contended that no judgment should be entered against it under those circumstances as consistently as it now makes the contention that it should not be held on the judgment here affirmed.

The oil company also contends that it excepted to the granting of the plaintiff's C prayer, and that it should have the same benefits from the ruling as the transit company. With this we cannot agree, as the ruling of the trial court was favorable and not adverse to the oil company, and served to hold the transit company on the presumption against it as a carrier, even though the jury should find there was no evidence of active negligence against it.

*Motion overruled.*